FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MEYERS DIVISION

2018 MAR -9 PM 3: 09

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

L. YVONNE BROWN, §
         Plaintiff, §
VS §
 §
FLORIDA GULF COAST UNIVERSITY §
  BOARD OF TRUSTEES; §
KEN KAVANAGH; §
  INDIVIDUALLY AND IN OFFICIAL §
  CAPACITY §
KARL SMESKO; INDIVIDUALLY §
  AND IN OFFICIAL CAPACITY §
RODERICK ROLLE; §
  INDIVIDUALLY AND IN OFFICIAL §
  CAPACITY §
KELLY BROCK; INDIVIDUALLY §
  AND IN OFFICIAL CAPACITY §
      Defendants, §

2:18-CV-157-FtM-29MRM

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

    COMES NOW, L. YVONNE BROWN, Plaintiff, and files this her Original Complaint

against the FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES, KEN

KAVANAGH, KARL SMESKO, RODERICK ROLLE, KELLY BROCK, and other unknown

individuals, hereinafter referred to as Defendants, for violations of the Plaintiff's right to equal

protection of all University rules, regulations, policies, etc., and for violations of the Plaintiff's

right to procedural due process pursuant to Section I of the Fourteenth Amendment to the United

States Constitution, individual right to equal protection under the Equal Protection Clause of the

Fourteenth Amendment to the United States Constitution This suit is also brought to recover

actual damages as well as compensatory, and punitive, damages, for incidences of harassment,

public humiliation, emotional distress, duress, pain and suffering, and damage to reputation, and

Plaintiff's Original Complaint
1 of 31

to obtain injunctive, declaratory, relief pursuant to 28 U.S.C. §§ 2201 and 2202, and other relief for violating the Plaintiff's right to equal protection and procedural due process s pursuant to the Fourteenth Amendment to the United States Constitution and equal protection pursuant to 42 U.S.C. § 1983by the Defendants herein, and other unknown Defendants who may be added later, and in support of this Original Complaint, and for cause of action would show the Court as follows:

## I. DISCOVERY PLAN

The Plaintiff seeks a level of discovery that is within the Federal Rules of Civil Procedure suitable to prove her claims against the Defendants named herein and other unknown Defendants that may be added to this suit at a later date.

## II. PARTIES

1.      Plaintiff L. YVONNE BROWN(hereinafter "Brown") is a citizen of the United States of America and a resident of the State of Florida.  At all times material hereto, Brown was a full-time student at Florida Gulf Coast University and a member of the Women's Basketball Team at Florida Gulf Coast University.

2.      Upon information and belief, Defendant FLORIDA GULF COAST UNIVERSITY (hereinafter "FGCU")  BOARD OF TRUSTEES (hereinafter "BOARD"), was, and is, a public entity and the duly empowered governing authority for FGCU.  FGCU is a public institution of higher education located in Fort Meyers, Florida, and is a recipient of federal funding.  This Defendant may be served with citation by serving it's Chair, Mr. Blake Gable, at Barron Collier Companies, 2600 Golden Gate Parkway, Naples, Florida 34105.

3.      Upon information and belief, Defendant KEN KAVANAGH (hereinafter "KAVANAGH") is the Athletic Director at FGCU. FGCU was, and is, a public entity and the duly empowered governing authority for FGCU. FGCU is a public institution of higher education located in Fort Meyers, Florida, and is a recipient of federal funding. This Defendant may be served with citation by serving Ken Kavanagh at 10501 FGCU Boulevard South, Fort Meyers, Florida 33965.

4.      Upon information and belief, Defendant KARL SMESKO (hereinafter "SMESKO") is the head women's basketball coach at FGCU. FGCU was, and is, a public entity and the duly empowered governing authority for FGCU. FGCU is a public institution of higher education located in Fort Meyers, Florida, and is a recipient of federal funding. This Defendant may be served with citation by serving Karl Smesko at 10501 FGCU Boulevard South, Fort Meyers, Florida 33965.

5.      Upon information and belief, Defendant KELLY BROCK (hereinafter "BROCK") is the assistant athletic director and the director of the student-athlete learning center at FGCU. FGCU was, and is, a public entity and the duly empowered governing authority for FGCU. FGCU is a public institution of higher education located in Fort Meyers, Florida, and is a recipient of federal funding. This Defendant may be served with citation by serving Kelly Brock at 10501 FGCU Boulevard South, Fort Meyers, Florida 33965.

6.      Upon information and belief, Defendant RODERICK ROLLE (hereinafter "SMESKO) is a Biological Science Professor at FGCU. FGCU was, and is, a public entity and the duly empowered governing authority for FGCU. FGCU is a public institution of higher education located in Fort Meyers, Florida, and is a recipient of federal funding. This Defendant may be

served with citation by serving Roderick Rolle at FGCU Library, 10501 FGCU Boulevard South, Room 456, Fort Meyers, Florida 33965.

## III. JURISDICTION AND VENUE

7.     This Court has jurisdiction over the Plaintiff's federal claims under **28 U.S.C. § 1331** and the common law pendent jurisdiction doctrine.

8.     Venue is proper as all or most of the acts complained of herein occurred in Lee County, Florida.

## IV. NATURE OF THE CASE

9.     L. Yvonne Brown is an African-American female who enrolled in FGCU for the Fall Semester, which began on August 21, 2017, after she graduated from high school in June of 2017 and learning from the head women's basketball coach, Smesko, that she would be a member of the FGCU Women's Basketball Team beginning in the Fall of 2017.  Upon enrolling at FGCU for the Fall semester, Brown took, and passed, thirteen hours of education classes in the Fall semester and was deemed "in good academic standing" by FGCU after the Fall semester. After completing the Fall semester, Brown enrolled in thirteen hours of education classes for the Spring semester including a one hour Biology II Lab class taught by Defendant Rolle.  Rolle's class is a three hour class that meets on Monday's only.  Even though Rolle's class began on January 8, 2018, the relationship between Brown and Rolle took a dramatic turn for the worse when Brown rebuked Rolle for telling Brown that she could not pass his class and play basketball because the two "do not coincide" and for calling Brown "dumb" to her face when he told Brown that Brown's lab partner was a "A" student and that the only "variable" from the first

semester was Brown as Rolle had Brown's lab partner in his Biology I class during the first semester.

10.     After Brown strongly rebuked Rolle for his inappropriate, arbitrary, unfounded remarks, Rolle became angry and began "throwing the book at Brown. Rolle refused to give Brown credit for any assignments turned in by Brown under the FGCU "Authorized Absence" Policy, due to Brown missing class while on road representing FGCU in women's basketball games. Also, Rolle went into his grade book and changed all Brown's grades previously given under the "Authorized Absence" Policy to to zero, which was ever grade except for the first lab assignment grade of 20% which he left unchanged. Rolle then began reporting false, fake, materially low, grades to Brown's personal FGCU portal for grades by averaging in zero's for all of Brown assignments.

11.     Lastly, Brown, as a student-athlete, is required to report her personal portal grades in all classes to Brock, who then reports the grades to Smesko. On February 5, 2018, Brown reported her grades to Brock, while at the same time telling Brock that her grades in Rolle's class were false, fake, and materially lower than her actual grade in his class. However, after Smesko received the false, fake, materially low grades, Smesko took a disciplinary action against Brown on February 7, 2018 by suspending Brown from the women's basketball road trip which began on Friday February 9, 2018 for poor grades in Rolle's class. Smesko's disciplinary action of suspension was _without notice or a hearing_. Furthermore, after Rolle sent emails to Brock, Smesko, and Kavanagh between the dates of February 9, 2018 and February 13, 2018 and actually met with them on February 13, 2018, arbitrarily alleging that Brown was abusing the "Authorized Absence" Policy in his class, and sharing additional grades for Brown of zero's in his class between February 7, and February 13, 2018 without _Brown's consent_, Smesko took

Plaintiff's Original Complaint
5 of 31

another disciplinary action against Brown and dismissed Brown from the women's basketball team on February 14, 2018 *with only ten days remaining in the FGCU women's basketball regular season*. Smesko's second disciplinary action against Brown, of dismissal was taken *without notice or a hearing*. Thus, Smesko's second, and much more severe, disciplinary action taken against Brown before Brown was afforded a notice, or a hearing, violates FGCU's "Student Code of Conduct" Policy between Brown and FGCU, and violates Brown's constitutional right to procedural due process pursuant to Section I of Fourteenth Amendment to United States constitution, as both mandate notice and hearing before any adverse disciplinary action could be taken against Brown by Smesko.

## V.  FACTUAL BACKGROUND

12.     Brown, an African American female, who was evaluated as a three-star wing coming out of high school, decided to attend FGCU after the head women's basketball coach informed her that she would be a member of the women's basketball team beginning in the Fall of 2018. Upon arriving at FGCU in August of 2017, Brown enrolled in, and passed, thirteen hours in the Fall semester and did not fail any classes.   After the Fall semester, Brown was declared "in good academic standing" by FGCU.   For the Spring, 2018, semester, Brown enrolled in thirteen hours of classes, including Rolle's one-hour Biology II Lab Class.   FGCU women's basketball team is in the midst of a record-breaking season.   The FGCU women's basketball team won the conference title on Saturday March 3, 2018 and is scheduled to play in the conference tournament final, on national television, and around the world, on Sunday March 11, 2018.

13.     The Spring semester began at FGCU on Monday February 8, 2018.

14.     On Monday January 8, 2018, at approximately 1:30 p.m., Brown personally appeared and fully participated in Professor Roderick Rolle's Biology II Lab class until it ended and all students were dismissed.

15.     On Monday January 8, 2018, Professor Rolle assigned each student in his class one lab partner and informed the class that each lab was responsible for turning in each lab assignment but that he would only grade one of the two lab assignments and give each of the two lab partners that one grade.

16.     On January 12, 2018, Brown turned in my first lab assignment in Professor Rolle's class entitled "Lab 3".

17.     The "Lab 3" assignment consisted of nearly sixty(60) questions.

4.     On January 12, 2018, Professor Rolle gave Brown and her lab partner a grade of 20% on "Lab 3" lab assignment.

18.     On Monday January 22, 2018, at 1:30 p.m. Brown did *not* personally appeared and was not present for Professor Roderick Rolle's Biology II Lab class.

19.     On Monday January 22, 2018, at 1:30 p.m., Brown was in Nashville, Tennessee participating in an FGCU authorized athletic event, preparing our team for a women's basketball game later that evening.

20.     On Tuesday January 23, 2018, Brown returned to the FGCU campus with the women's basketball team.

21.     On January 24, 2018, Brown turned in her second lab assignment in Professor Rolle's class entitled "Bacterial Staining" on-time, and prior to the 1:30 deadline.

22.     On January 24, 2018, Brown turned in her third lab assignment in Professor Rolle's class entitled "Lab 3 Continue (pages 14-21)" on time, and prior to the 1:30 deadline.

23.     On Monday January 29, 2018, at 9:47 a.m., Professor Rolle graded Brown's third lab

assignment, "Lab 3 Continue(pages 14-21)", and gave Brown a grade of 100%

24.     On Monday January 29, 2018, at 11:06 a.m., Professor Rolle graded Brown's second lab

assignment, "Bacterial Staining", and gave Brown a grade of 100%

25.     On Monday January 29, 2018, Brown personally appeared and fully participated in

Professor Rolle's Biology II Lab Class until it ended and all students were dismissed.

26.     On Monday January 29, 2018 Brown approached Rolle in class and asked if there was

anything that she and her lab partner could do to make-up for the low grade of 20% on the first

graded assignment in his class, "Lab 3". Rolle then informed Brown that it will be impossible

for her, as a woman, to pass his lab class and play basketball as basketball and his biology II lab

class "do not coincide". He went on to say that he had her lab partner in his Biology I class in

the first semester and that her lab partner is an "A" student, he "produces good work", that he

was not going to allow her to "pull him  down", and that were no "variables" for Brown's lab

partner from the first semester other Brown. Rolle stated that he likes to place "A" students with

"A" students and "B" students with "B" students and so on. Rolle then went on to say that he

was going to remove Brown from her lab partner and put her in a lab group all by herself. When

Brown refused to be in a lab all by herself, Rolle then said he would then "put Brown in a lab

with the girl who hasn't shown up for class yet". When Brown refused that arrangement as well

and strongly rebuked Rolle for saying she couldn't pass his class and play basketball and for

implying that Brown was the reason for the low grade on the first lab assignment as opposed to

Brown's lab partner, Rolle then informed Brown that he was going to give Brown a zero for all

assignments turned in by Brown in which Brown was not physically present in his class for his

instruction given on that particular lab assignment. Brown then referred Rolle to the FGCU

"Authorized Absence" policy in the FGCU Academic Catalog which allows student-athletes to make up work missed when they miss class for participating authorized FGCU sponsored athletic events. Rolle then stated that he was still going to give Brown zero's for all assignments she turns in if she wasn't physically present in his class for his instruction on the particular assignment.

27.     On Monday, January 29, 2018, immediately after being dismissed from Rolle's class, Brown went to the office of the Chair of the Biology Department, Dr. Clifford and complaintg about the treatment she had just received in Rolle's Biology II Lab class.

28.     On Tuesday January 30, 2018, at 7:38 a.m., Rolle went into his internet grade book and changed Brown's grade originally received on Brown's second lab assignment, "Bacterial Staining", from a 100% to a zero.

29.     On Wednesday January 31, 2018, at 7:04 a.m., Brock sent Brown an email demanding that Brown send Brock a copy of Brown's personal internet portal showing her "grade average" in all of her classes.

30.     On Wednesday January 31, 2018, at 9:36 a.m., Rolle sent Brown an email informing Brown that Brown would receive a grade of a zero for all assignments turned in by Brown in which Brown was not physically present in his Monday lab class in which he gave instruction on that particular assignment.

31.     On Wednesday January 31, 2018 at 12:00 noon, Brown left the FGCU campus with the women's basketball team heading to Jacksonville, Florida for women's basketball games in Jacksonville, Florida on Thursday February 1, 2018 and Saturday February 3, 2018.

32.     On Wednesday January 31, 2018 at 1:30 p.m., Brown did not turn in her lab assignment entitled "Lab 4 Drawing" that was due by 1:30 p.m. in Rolle's class as Brown was away from the

FGCU campus for an authorized athletic event and because Brown had not finished the assignment due to Brown's travel under the FGCU "Authorized Absence" Policy.

33.     On Thursday February 1, 2018, at 9:59 a.m., Rolle sent Brown another email stating that if a student is not present in his class he will not grade their assignment because it will be unfair to their lab partner because they were not present.

34.     On Thursday February 1, 2018, at 11:01 a.m., Rolle went into his internet grade book and changed Brown's grade originally received on Brown's third lab assignment, "Lab 3 Continue(pages 12-21)", from a 100% to a zero.

35.     On Thursday February 1, 2018, at 11:01 a.m., Rolle went into his internet grade book and changed Brown's grade for a third time on Brown's third lab assignment, "Lab 3 Continue(pages 12-21)", from a zero to a "No Grade".

36.     On Thursday February 1, 2018, at 11:06 a.m., Rolle went into his internet grade book and changed Brown's grade for a third time on my second lab assignment, "Bacterial Staining", from a zero to a "No Grade".

37.     On Friday February 2, 2018 at 1:30 p.m., Brown did not turn in her lab assignment entitled "Lab 4" that was due by 1:30 p.m. in Rolle's class as Brown was away from the FGCU campus for an authorized athletic event and because Brown had not finished the assignment to Brown's satisfaction due to Brown's travel under the FGCU "Authorized Absence" Policy.

38.     On Monday February 5, 2018, Brown personally appeared and fully participated in Rolle's Biology II Lab Class until it ended and all students were dismissed.

39.     On Monday February 5, 2018, while in class, Brown approached Rolle and asked Rolle how Brown was supposed to turn in assignment 4, "Lab 4 Drawings", and assignment 5, "Lab 4" as these assignments were not turned in on time due to under the FGCU "Authorized Absence"

Policy due to Brown being away from campus in authorized athletic events when these assignments became due.  Professor Rolle "pretended" that he didn't hear me and continued to do what he was doing. I returned to seat.

40.     On February 5, 2018, after 6:00 p.m., Brown was forced to submit her grades to Brock which included the fake, false, materially low grade, to Brock via text including a text from Brown that the grade posted for Rolle was false, fake, and materially understated as to my real grade in Rolle's class.  Brock never responded to Brown's text attached to Brown's grades.

41.     On February 7, 2018, around noon, Smesko called Brown in his office and informed Brown that Brown was being suspended immediately from women's basketball road trip, scheduled to begin on Friday February 9, 2018 by Smesko due to low grade, almost an average of zero, posted to Brown's grade report by Rolle and due to emails regarding this situation received by Smesko *without any notice or hearing* .

42.     On February 7, 2018, at 10:19 p.m., Brown emailed her lab assignment number 4, "Lab 4 Drawings" and assignment five, "Lab 4", in which Rolle had blocked her from turning in earlier.

43.     On Sunday February 11, 2018, at 7:46 a.m., Rolle sent Brown an email stating that Brown "didn't have to wait until the last day, and at the last hour, to turn in lab assignments number four,  and five", and that Brown "could have turned them in early", or before Brown left on her road trip, and, because Brown could have turned them in before she left on her road trip, he was not applying the FGCU "Authorized Absence" Policy to these assignment and therefore, these assignments would receive a grade of zero.  Rolle went on to say that my other two assignments, assignment number 2, "Bacterial Staining", and assignment number three "Lab 3 Continue(pages 14-21" are *"excused"* but he was going to grade them with a *"special*

*calculation process"* because of my *"unusual situation"* because the student internet grading portal is for *"students without excuses"*.

44.     On February 13, 2018, Rolle submitted additional false, fake, materially low grades of zero on assignments four and five to Brock, Smesko, and Kavanagh without my consent.

45.     As of February 14, 2018, Professor Rolle had still had "no grade" listed for assignment number two or three and Brown had zero's on assignments four and five.

46.     On the morning of February 14, 2018, Coach Karl Smesko called Brown to his office and severely disciplined Brown by dismissing her from the women's basketball team *with only ten days left in the women's basketball regular season*, *after only one month into the Spring academic semester*, and *on non-final grades in Rolle's class*, citing that Brown's grades had not improved since the suspension, only seven days earlier, and because he had received some additional emails about this situation with Professor Rolle since February 7, 2018. Once again, Smesko's disciplinary action against Brown was *without any notice or hearing*.

47.     On February 14, 2018, at 3:28 p.m., Rolle submitted an email to Brown stating that he had a meeting with the FGCU Athletic Director, and Athletic Academic Advisor, Kelly Brock, on February 13, 2018,  that he advised them on the "Ms. Brown Situation", and that Brock assured him that he was going "above and beyond" the expectations of the FGCU Athletic Department in his grading of Brown.

48.     On February 15, at 8:14 a.m., Brock informed Brown that, due to her no longer being a member of women's basketball team, Brown would no longer have access to the Athletic Academic Training Center causing Brown to lose access to tutors in all of her classes that Brown has had access to since first arriving on campus in August of 2017.

49. On February 16, 2018, Brown submitted an "Apoligy Letter" to Smesko apologizing for anything she could have done to cause being dismissed from the team even though Brown didn't know of anything she had done and asked for reinstatement to the women's basketball team.

50. On February 16, 2018, Smesko responded to Brown's "Apology Letter" by refusing to reinstate Brown to the team.

51. On February 16, 2018, Subsequent to Brown's "Apology Letter" to Smesko, Brown sought reinstatement to the women's basketball team from Kavanagh, Athletic Director. Brown's request was denied.

52. On February 23, 2018, Brown was removed from Rolle's class by the Biology Chair, Dr. Renk, and Ombudsperson, Monique McKay for the remainder of the semester and transferred to another Biology II Lab class.

53. On February 27, 2018, Brown was informed by Kavanagh that he is the "Sport Coordinator" for Women's Basketball meaning that he himself serves as both the is the second, and third, level of the FGCU grievance process and promptly denied Brown's grievance regarding being improperly dismissed from women's basketball team.

54. On March 1, 2018, Brown submitted her appeal to FGCU Faculty Athletic Representative appealing Smesko's disciplinary action dismissing Brown from the women's basketball team to the "Reinstatement Appeals Committee" (1) due to Smesko being barred, under the "Authorized Absence" Policy to penalize Brown for Rolle's refusal to give Brown credit for her work turned into Rolle under the "Authorized Absence" Policy, and (2) due to Smesko taking a disciplinary action against Brown by dismissing Brown from the women's basketball team without any notice or hearing before enforcing such disciplinary action.

55.     On March 1, 2018, after filing her Reinstatement Appeal with the "Reinstatement Appeals Committee, Brown requested temporary reinstatement to the women's basketball team from Smesko during the pendency of Brown's Reinstatement Appeal.

56.     On Thursday March 1, 2018, Smesko denied Brown's request for temporary reinstatement and stated that no reinstatement would occur "until after my reinstatement appeal hearing.

57.     On Thursday March 1, 2018, Brown filed a grievance against Rolle seeking the immediate reinstatement of the original grade posted of 100% by Rolle on Brown's lab assignments two, "Bacterial Staining" and lab assignment three, "Lab 3 Continue (pages 14-21) as opposed to the zero's that are posted now.

58.     On Friday March 2, 2018, the FGCU "Faculty Athletics Representative", Dr. Thomas J. Roberts, responded to Brown's "Reinstatement Appeal Committee" hearing request and indicated that a hearing will be held between now and March 31, 2018 but no hearing date has been set yet.

59.     On Friday March 2, 2018 classes at FGCU broke for Spring Break.

60.     On March 5, 2018, Brown requested temporary reinstatement during pendency of Reinstatement Appeal hearing from FGCU Chief of Staff, Susan Evans.  Ms. Evans never responded to Brown's request for temporary reinstatement.

61.     On March 7, 2018, Monique McKay, FGCU Ombudsperson, and Assistant to the President, responded to Brown's March 1, 2018 grievance against Rolle by stating that no challenge can be made to a non-final grade and that only a final grade can be challenged and that challenge cannot occur until at the end of the semester.

62.     On March 8, 2018, I requested temporary reinstatement to women's basketball team from

Ken Kavanagh during pendency of my Reinstatement Appeal Hearing.

63.     As of March 9, 2018, Mr. Kavanagh has failed to respond to my temporary reinstatement

request.

## VI.  ARGUMENT

A.     **Brown has not violated any FGCU Women's Basketball team rule,
regulation, or policy, FGCU rule, regulation, or policy, or any local state or
federal law that would even come close to warranting suspension, or
dismissal, from women's basketball team by Smesko, or any other
disciplinary body at FGCU.**

64.     At the time Brown was suspended, and later dismissed by Smesko, Brown was never

notified Brown of any women's basketball team rule, regulation, or policy, FGCU rule,

regulation or policy, or any local, state or federal law violated by Brown that would substantiate

Smesko's decision to suspend, and later dismiss, Brown from the FGCU women's basketball

team with only ten days left in the season, and less than a month into the second semester.

Brown was not notified because there were no violations of any kind by Brown that would

warrant such actions by Smesko causing Smesko's actions to be arbitrary, capricious, and

completely unfounded.  The only information that was given to Brown was regarding Smesko's

determination that Brown's academic performance in Rolle's class was extremely poor due to

false, fake, materially low non-final grades reported to Brown's internet grade report by Rolle

which are disputed by Brown but cannot be challenged by Brown until the end of the semester

when the grades reported by Rolle become final.  Therefore Smesko's suspension, and dismissal,

was premature, at best, and must be reversed and Brown must be placed back in the position she

was in before the institution of Smesko's suspension, and dismissal,  which is full membership,

and privileges, on the women's basketball team retroactive to February 7, 2018.

B.    **The grades reported by Rolle on assignments two, three, four, and five turned in by Brown under the FGCU "Authorized Absence" Policy are false.**

65.    Regarding assignments two and three. Brown turned in assignment two, "Bacterial Staining" and three, "Lab 3", on time but under the FGCU "Authorized Absence" Policy as Brown was not in class when the assignment was handed out, and instructions on the assignment were provided to the class. However, Brown printed the assignments off and used her book to get up to speed on how to properly complete the assignment. She then collaborated with her lab partner on each assignment, as she was instructed to do by Rolle, even if she had been in class, to ensure that her and her lab partner were on the same page regarding their understanding on the lab assignment. She then completed the assignments, turned them in on time, and received a grade of 100% on each assignments initially until Rolle retaliated against her for complaining about his behavior towards her by going into his grade book and changing her grade on each assignment from 100% to zero.

66.    Regarding lab assignments four and five, Brown was actually in class and received Rolle's complete instructions on assignments four, "Lab 4 Drawings" and assignment five, "Lab 4". Brown collaborated with her lab partner in class, and after class, again as instructed by Rolle to do and completed the assignments. However, because Brown was out of town at an FGCU women's basketball game when each of these assignments became due, Brown turned these assignments in, after their due dates, when she arrived back to campus under the FGCU "Authorized Absence" Policy. However, Rolle, retailiated against Brown again by refusing to give Brown credit for her work on the assignments and, instead, gave Brown zero's on both lab assignments even though Brown's lab partner got a grade of 100% on each lab assignment.

67.   Brown was entitled to full credit on lab assignments two, three, four, and five under the

FGCU "Authorized Absence" Policy.  Had she received proper credit for her work, she would

have gotten grades of 100% on all four lab assignments which would have cause her grade in

Rolle's class to be reported fairly on February 5, 2018 and Brown would have never been

suspended, or dismissed, from the women's basketball team.   Rolle must be ordered to give

Brown the credit she earned on each of these assignment with a new grade report, retroactive to

February 5, 2018, reported to Brock, and women's basketball thereby clearing Brown of the false

determination of poor academic performance in Rolle's class.

C.   **Brown was protected by the FGCU "Authorized Absence" Policy from any kind of penalty from Rolle or Smesko regarding Brown's dispute with Rolle over Brown not receiving credit for her work turned in to Rolle under "Authorized Absence" Policy.**

68.   Pursuant to FGCU "Authorized Absence" Policy, which states:

"An authorized absence is an absence due to participation in a university sponsored activity that has been approved in advance by the director and the appropriate student affairs officer.  Such an absence permits the student to make up the work missed when practical or to be given special allowance to that he/she is not penalized for the absence".

As a result, Rolle's action of giving Brown zero's when she missed his class due to her

participation in FGCU approved athletic events constitute a penalty, even if Brown is successful

in her "grade appeal" of any final grade in Rolle's class at the end of the semester.  Rolle's action

of "temporarily" giving Brwon zero's for assignments turned in by Brown under the FGCU

"Authorized Absence" Policy during the semester until Brown successfully overturns his actions

at the end of the semester is a penalty at all points during the semester when Brown's grade

report shows zero's for assignments turned in by Brown under the Authorized Absence Policy

and, thus, is a violation of the FGCU "Authorized Absence" Policy by Rolle.

69.     Smesko, also violated the FGCU "Authorized Absence" Policy when he penalized Brown

by suspending her due to Brown's grade report showing an extremely low grade posted by Rolle

on the Report as Brown's assignments were turned in under the FGCU "Authorized Attendance"

Policy.  Also, if FGCU Ombudspeson is of the opinion that the dispute between Brown and Rolle

is a grade appeal and cannot be taken until end of semester, then Smesko's punishment of

suspension, and dismissal, is premature and cannot be taken until the grade in Rolle's class

becomes final which, again, constitutes a violation of FGCU's "Authorized Attendance" Policy

by Smesko when he penalized Brown, for non-final grades posted by Rolle due to assignments

turned in to Rolle by Brown under the FGCU "Authorized Absence Policy.  Smesko's

suspension, and dismissal, was premature, at best and must be reversed and Brown must be

placed back in the position she was in before the institution of Smesko's suspension, and

dismissal which is full membership, and privileges, on the women's basketball team retroactive

to February 7, 2018.

       **D.**     **Brown was entitled to procedural due process for her property interest in her participation in women's basketball before any disciplinary action could be enforced against her by Smesko.**

70.     Brown has a property interest in her education, including women's basketball, at FGCU

when Brown enrolled at FGCU for the 2017-2018 academic year, to be a full-time student and

play basketball, and the complete cost of attendance for Brown's education was paid.  Pursuant

to the Fourteenth Amendment to the United States Constitution, Brown was lawfully entitled to

procedural due process, including notice and hearing, before any adverse disciplinary action

could be enforced against her by Smesko.  Suspending Brown from the women's basketball team

for poor grade performance in Rolle's class, or for any other reason unknown to the Plaintiff at

this point, is a disciplinary action.  Dismissing Brown from the women's basketball team for

Plaintiff's Original Complaint
18 of 31

poor grades, or any other reason unknown to Plaintiff at this point is also a disciplinary action, but much more severe.

71.     Whether the grades reported to Brown's personal internet grade portal by Rolle were false, fake, or not, if Smesko wanted to take a disciplinary action against Brown pertaining to the grades, Smesko had a "non-discretionary duty" to provide Brown with procedural due process including notice and hearing before enforcing the sanction of suspension, or dismissal, from the women's basketball team. Smesko's failure to provide BROWN with notice or hearing before suspending, or dismissing, her from the women's basketball team constitutes a violation of Brown's Fourteenth Amendment, Section I, right to due process thereby causing Brown to be wrongfully suspended, and later dismissed, from the women's basketball team. As a result, the suspension, and dismissal, must be reversed placing Brown back in the position she was in before his unlawful act was committed against her which was membership on the women's basketball team with full privileges.

     **E.     Brown was entitled to procedural due process for her liberty interest in her participation in women's basketball before any disciplinary action could be enforced against her by Smesko.**

72.     Brown has a liberty interest in her education, including women's basketball, at FGCU. The due process clause of the Fourteenth Amendment also forbids arbitrary deprivations of liberty. When a person's good name, honor, or integrity is at stake, due process must be provided. Brown's good name, honor, and integrity among her teammates, student body, academia, women's basketball coaches, and athletic administration, back home, and across America among family, friends, and enemies, is at stake in this matter. Also, the suspension, and dismissal, will make it very difficult, or possibly impossible, for Brown to seek an education, and resume her athletic participation, elsewhere and to find employment after college should she

Plaintiff's Original Complaint
19 of 31

remain at FGCU or transfer.  As a result, procedural due process, including notice and hearing, must be afforded to Brown to protect her liberty interests at FGCU, and elsewhere.  Therefore, pursuant to the Fourteenth Amendment to the United States Constitution, Brown was lawfully entitled to procedural due process, including notice and hearing, before any adverse disciplinary action could be enforced against her by Smesko.  Suspending Brown form the women's basketball team for poor grade performance in Rolle's class, or for any other reason unknown to the Plaintiff at this point, is a disciplinary action.  Dismissing Brown from the women's basketball team for poor grades, or any other reason unknown to Plaintiff at this point is also a disciplinary action, but much more severe.

73.    Whether the grades reported to Brown's personal internet grade portal by Rolle were false, fake, or not, if Smesko wanted to take a disciplinary action against Brown pertaining to the grades, Smesko had a "non-discretionary duty" to provide Brown with procedural due process including notice and hearing before enforcing the sanction of suspension, or dismissal, from the women's basketball team.  Smesko's failure to provide Brown with notice or hearing before suspending, or dismissing, her from the women's basketball team constitutes a violation of Brown's Fourteenth Amendment, Section I, right to due process thereby causing Brown to be wrongfully suspended, and later dismissed, from the women's basketball team.  As a result, the suspension, and dismissal, must be reversed placing Brown back in the position she was in before his unlawful act was committed against her which was membership on the women's basketball team with full privileges.

**F.**   **Brown was entitled to procedural due process for her property interest in her access to the FGCU Athletic Academic Center before any disciplinary action could be enforced against her by Brock.**

74.    BROWN has a property interest in her education, including access to the FGCU Athletic Academic Center, at FGCU when Brown enrolled at FGCU for the 2017-2018 academic year, to be a full-time student and play basketball, and the complete cost of attendance for Brown's education was paid.  Pursuant to the Fourteenth Amendment to the United States Constitution, Brown was lawfully entitled to procedural due process, including notice and hearing, before any adverse disciplinary action could be enforced against her by Brock.  Kicking Brown out of the Athletic Academic Center where all of Brown's tutors assigned to her by athletics are due to Brown being dismissed from women's basketball, or for any other reason unknown to Brown at this time, is a disciplinary action.

75.    If Brock wanted to take a disciplinary action against Brown pertaining to Brown being dismissed from women's basketball, Brock had a "non-discretionary duty" to provide Brown with procedural due process including notice and hearing before enforcing the sanction of removal from the Athletic Advising Center thereby denying Brown access to her tutors.  Brock's failure to provide Brown with notice or hearing before removing her from the Athletic Advising Center constitutes a violation of Brown's Fourteenth Amendment, Section I, right to due process thereby causing Brown to be wrongfully from the Athletic Advising Center.  As a result, the removal must be reversed placing Brown back in the position she was in before his unlawful act was committed against her which full access to the FGCU Academic Advising Center.

**G.**   **Brown was entitled to procedural due process for her liberty interest in her access to the FGCU Athletic Academic Center before any disciplinary action could be enforced against her by Brock.**

76.   Brown has a liberty interest in access to the FGCU Athletic Advising Center. The due process clause of the Fourteenth Amendment also forbids arbitrary deprivations of liberty. When a person's good name, honor, or integrity is at stake, due process must be provided. Brown's good name, honor, and integrity among her teammates, student body, academia, women's basketball coaches, and athletic administration, back home, and across America among family, friends, and enemies, is at stake in this matter. Also, the removal from the Athletic Advising Center will make it very difficult for Brown to pass her classes with the highest grade possible as she is forced to go without any academic assistance from tutors as the regular student body tutors are extremely difficult to get appointments as several thousand students are all trying to get in to see them. The public humiliation and shame is tremendous for Brown right now as student after student, and athlete after athlete, are all coming up to her and asking her what's going on. As a result, procedural due process, including notice and hearing, must be afforded to Brown to protect her liberty interests in the Athletic Academic Advising Center at FGCU, and elsewhere. Therefore, pursuant to the Fourteenth Amendment to the United States Constitution, Brown was lawfully entitled to procedural due process, including notice and hearing, before any adverse disciplinary action could be enforced against her by Brock. Kicking Brown out of the Athletic Advising Center due to Brown's dismissal from women's basketball, or for any other reason unknown to the Plaintiff at this point, is a disciplinary action.

77.   Whether the dismissal from women's basketball was justified or not, if Brock wanted to take a disciplinary action against Brown by dismissing Brown from the Athletic Advising Center, Brock had a "non-discretionary duty" to provide Brown with procedural due process

including notice and hearing before enforcing the sanction of dismissal from the Athletic

Advising Center. Brock's failure to provide BROWN with notice or hearing before removing

her from the Athletic Advising Center constitutes a violation of Brown's Fourteenth

Amendment, Section I, right to due process thereby causing Brown to be wrongfully from the

Athletic Advising Center. As a result, the removal must be reversed placing Brown back in the

position she was in before his unlawful act was committed against her which full access to the

FGCU Academic Advising Center.

## VII. VIOLATION OF FGCU "AUTHORIZED ABSENCE" POLICY

78.     Plaintiff hereby incorporate paragraphs 12 through 63 in Section V above. Plaintiff

hereby incorporate paragraphs 64 through 77 in Section VI above. Plaintiff hereby incorporate

the foregoing paragraphs in this Complaint in this count by reference as fully as if set forth at

length herein. The actions and omissions of Defendants FLORIDA GULF COAST

UNIVERSITY BOARD OF TRUSTEES, KEN KAVANAGH, KARL SMESKO, RODERICK

ROLLE, KELLY BROCK, and other unknown individuals, hereinafter referred to as

Defendants, as above described, singularly or in combination with others, constitute a violation

of the FGCU "Authorized Absence" Policy, when the Defendants (1) failed to give the Plaintiff

full credit for assignments turned in after missing class for an FGCU approved athletic event,

and, (2) when Smesko, Brock, and Kavanagh penalized Brown by took disciplinary actions

against Brown by suspending, and later dismissing her from the women's basketball team for

grades posted to Brown personal internet portal for grades by Rolle that did not give Brown

credit for work turned in under FGCU "Authorized Absence" Policy when the policy prohibits

any such penalties against Brown. The aforementioned acts are willful violations of FGCU

"Authorized Absence" Policy . These violations entitle the Plaintiff's position, and standing, on
Plaintiff's Original Complaint
23 of 31

the FGCU women's basketball team to be restored to where it was before this controversy began which was full membership and privileges and to recover damages, including liquidated, compensatory, and punitive damages from the Defendants. The aforementioned acts also call for relief under pursuant to the Fourteenth Amendment to the United States Constitution.

## VIII. BREACH OF CONTRACT

79.      Plaintiff hereby incorporate paragraphs 12 through 63 in Section V above. Plaintiff hereby incorporate paragraphs 64 through 77 in Section VI above. Plaintiff hereby incorporate the foregoing paragraphs in this Complaint in this count by reference as fully as if set forth at length herein. The actions and omissions of Defendants FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES, KEN KAVANAGH, KARL SMESKO, RODERICK ROLLE, KELLY BROCK, and other unknown individuals, hereinafter referred to as Defendants, as above described, singularly or in combination with others, constitute a **BREACH OF CONTRACT** when the Defendants (1) failed to apply, and enforce, the FGCU "Authorized Absence" Policy to all assignments turned into Rolle by Brown after missing Rolle's class due to Brown's participation in FGCU approved athletic event, and (2) when the Defendants FGCU, Kavanagh, Smesko, took, and enforced, disciplinary action of suspending, and later dismissing, Brown from women's basketball team prior to affording Brown notice and hearing in violation of FGCU Code of Conduct, and (3) when the Defendant Brock took, and enforced, disciplinary action of dismissing Brown from Athletic Academic Center prior to affording Brown notice and hearing in violation of FGCU Code of Conduct. The aforementioned acts constitute a breach of contract and entitle the Brown to recover damages, including liquidated, compensatory, and punitive damages. The aforementioned acts also call for relief under the Fourteenth Amendment to the United States Constitution.

## IX. HOSTILE EDUCATIONAL ENVIRONMENT

80.     Plaintiff hereby incorporate paragraphs 12 through 63 in Section V above.  Plaintiff

hereby incorporate paragraphs 64 through 77 in Section VI above.  Plaintiff hereby incorporate

the foregoing paragraphs in this Complaint in this count by reference as fully as if set forth at

length herein.  The actions and omissions of Defendants FLORIDA GULF COAST

UNIVERSITY BOARD OF TRUSTEES, KEN KAVANAGH, KARL SMESKO, RODERICK

ROLLE, KELLY BROCK, and other unknown individuals, hereinafter referred to as

Defendants, as above described, singularly or in combination with others, constitute a

**HOSTILE EDUCATIONAL ENVIRONMENT** when the Defendants (1) penalized Brown for

turning in missed assignments under "Authorized Attendance" Policy when "Authorized

Attendance" Policy prohibits any penalty to Brown, and (2) when the Defendants FGCU,

Kavanagh, Smesko, took, and enforced, disciplinary action of suspending, and later dismissing,

Brown from women's basketball team prior to affording Brown notice and hearing , and (3)

when the Defendant Brock took, and enforced, disciplinary action of dismissing Brown from

Athletic Academic Center prior to affording Brown notice and hearing.  The aforementioned acts

constitute a breach of contract and entitle the Brown to recover damages, including liquidated,

compensatory, and punitive damages.  The aforementioned acts also call for relief under the

Fourteenth Amendment to the United States Constitution.

## X. RETALIATION

81.     Plaintiff hereby incorporate paragraphs 12 through 63 in Section V above.  Plaintiff

hereby incorporate paragraphs 64 through 77 in Section VI above.  Plaintiff hereby incorporate

the foregoing paragraphs in this Complaint in this count by reference as fully as if set forth at

length herein.  The actions and omissions of Defendants FLORIDA GULF COAST

UNIVERSITY BOARD OF TRUSTEES, KEN KAVANAGH, KARL SMESKO, RODERICK

ROLLE, KELLY BROCK, and other unknown individuals, hereinafter referred to as

Defendants, as above described, singularly or in combination with others, constitute

**RETALIATION** when the Defendant Rolle (1)  went into internet grade book and changed

Brown's grade on lab assignments two, "Bacterial Staining", and lab assignment three, "Lab 3

Continue (pages 14-21) to a grade of zero after initially giving Brown a grade of 100% on the

assignment after Brown rebuked him for telling her she can't pass his class and play basketball

and after calling Brown "dumb" to her face, and (2) when the Defendants FGCU, Kavanagh,

Smesko, took, and enforced, disciplinary action of suspending, and later dismissing, Brown from

women's basketball team based upon Rolle's false, fake, materially low grade report to Brown's

personal internet grade portal, and (3) when the Defendant Brock arbitrarily dismissed Brown

from Athletic Academic Center after Brown was dismissed from women's basketball team by

Smesko.  The aforementioned acts willfully constitute **RETALIATION** and entitle the Plaintiff

to reinstatement to the women's basketball team and to recover damages, including liquidated,

compensatory, and punitive damages.  The aforementioned acts also call for relief under the

Fourteenth Amendment to the United States Constitution.

## XI. PAIN AND SUFFERING

82.     Plaintiff hereby incorporate paragraphs 12 through 63 in Section V above.  Plaintiff

hereby incorporate paragraphs 64 through 77 in Section VI above.  Plaintiff hereby incorporate

the foregoing paragraphs in this Complaint in this count by reference as fully as if set forth at

length herein.  The actions and omissions of Defendants FLORIDA GULF COAST

UNIVERSITY BOARD OF TRUSTEES, KEN KAVANAGH, KARL SMESKO, RODERICK

ROLLE, KELLY BROCK, and other unknown individuals, hereinafter referred to as

Defendants, as above described, singularly or in combination with others, constitute intentional

infliction of pain, and suffering, on the Plaintiff when the Defendants Rolle (1) went into

internet grade book and changed Brown's grade on lab assignments two, "Bacterial Staining",

and lab assignment three, "Lab 3 Continue (pages 14-21) to a grade of zero after initially giving

Brown a grade of 100% on the assignment after Brown rebuked him for telling her she can't pass

his class and play basketball and after calling Brown "dumb" to her face, and (2) when the

Defendants FGCU, Kavanagh, Smesko, took, and enforced, disciplinary action of suspending,

and later dismissing, Brown from women's basketball team based upon Rolle's false, fake,

materially low grade report to Brown's personal internet grade portal, and (3) when the

Defendant Brock arbitrarily dismissed Brown from Athletic Academic Center after Brown was

dismissed from women's basketball team by Smesko. The aforementioned acts are willful acts

intended to cause harm to the Plaintiff and entitle the Plaintiff to reinstatement to the women's

basketball team and to recover damages, including liquidated, compensatory, and punitive

damages. The aforementioned acts also call for relief under the Fourteenth Amendment to the

United States Constitution.

## XII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

83.     Plaintiff hereby incorporate paragraphs 12 through 63 in Section V above. Plaintiff

hereby incorporate paragraphs 64 through 77 in Section VI above. Plaintiff hereby incorporate

the foregoing paragraphs in this Complaint in this count by reference as fully as if set forth at

length herein. The actions and omissions of Defendants FLORIDA GULF COAST

UNIVERSITY BOARD OF TRUSTEES, KEN KAVANAGH, KARL SMESKO, RODERICK

ROLLE, KELLY BROCK, and other unknown individuals, hereinafter referred to as

Defendants, as above described, singularly or in combination with others, constitute **Intentional Infliction of Emotional Distress** on the Plaintiff when the Defendants Rolle (1)  went into internet grade book and changed Brown's grade on lab assignments two, "Bacterial Staining", and lab assignment three, "Lab 3 Continue (pages 14-21) to a grade of zero after initially giving Brown a grade of 100% on the assignment after Brown rebuked him for telling her she can't pass his class and play basketball and after calling Brown "dumb" to her face, and (2) when the Defendants FGCU, Kavanagh, Smesko, took, and enforced, disciplinary action of suspending, and later dismissing, Brown from women's basketball team based upon Rolle's false, fake, materially low grade report to Brown's personal internet grade portal, and (3) when the Defendant Brock arbitrarily dismissed Brown from Athletic Academic Center after Brown was dismissed from women's basketball team by Smesko The aforementioned acts are willful acts intended to cause harm to the Plaintiff and entitle the Plaintiff to a reinstatement to the women's basketball team and to recover damages, including liquidated, compensatory, and punitive damages.  The aforementioned acts also call for relief under the Fourteenth Amendment to the United States Constitution.

## XIII. SPECIFIC PERFORMANCE

84.     Plaintiff hereby incorporate paragraphs 12 through 63 in Section V above.  Plaintiff hereby incorporate paragraphs 64 through 77 in Section VI above.  Plaintiff hereby incorporate the foregoing paragraphs in this Complaint in this count by reference as fully as if set forth at length herein.  The actions and omissions of Defendants FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES, KEN KAVANAGH, KARL SMESKO, RODERICK ROLLE, KELLY BROCK, and other unknown individuals, hereinafter referred to as

Defendants, as above described, singularly or in combination with others, constitute a violation

of the Plaintiff's right, or privilege, to be a member with fill rights and privileges, equal to all other similarly situated members of the FGCU Women's Basketball Team interacting with, and building a lifelong relationship, or bond, with her FGCU teammates. The aforementioned acts are willful violations of the FGCU and FGCU Women's Basketball mission statement that pledges to provide all students a fair, equal, education experience that includes a fair opportunity for all student-athletes on the team to reach their fullest potential in women's basketball. The Defendants actions violate the equal protection provisions of the Fourteenth Amendment to the United States Constitution and , **42 USC42 U.S.C. § 1983,** and entitle the Plaintiff to recover damages including liquidated, compensatory and punitive damages. Such violations also cause the Plaintiff to be in need of a court Order providing the Plaintiff relief from the unconstitutional act of Smesko and Brock of taking, and enforcing, disciplinary actions against Brown prior to affording Brown procedural due process including notice and hearing.

## XIV. INJUNCTIVE RELIEF

85.    Injunctive Relief. In part because the Plaintiff will be irreparably harmed without adequate remedy at law, Plaintiff seek relief to (1) bar the Defendants continuing to enforce disciplinary action taken against Brown prior to affording Brown procedural due process including notice and hearing pursuant to Fourteenth Amendment to United States Constitution thereby causing Brown to be reinstated to the FGCU Women's Basketball team and placed back in the position she was in before the unconstitutional disciplinary action was taken against Brown with full rights and privileges.

## XV. JURY DEMAND

86.    Demand is hereby made for a jury to decide all fact issues of this case.

Plaintiff's Original Complaint
29 of 31

## XVI. JOINT AND SEVERAL LIABILITY

87.    Liability of each of the Defendants is joint and several.

## XVII. REQUEST FOR RELIEF

88.    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendants be cited

to appear and answer and answer herein, and that upon final trial, Plaintiff have and recover the

following relief against the Defendants:

1.    Judgment for past and future pecuniary losses, emotional pain and suffering,
Inconvenience, loss of enjoyment of life, and other non-pecuniary losses;

2.    Exemplary, Compensatory, and Punitive damages in the amount to be determined
by the trier of fact;

3.    An Order by this Court declaring that Rolle violated the FGCH "Authorized
Absence" Policy when he changed the grade initially given to Brown on
assignments two, "Bacterial Staining", and assignment three, "Lab 3" of 100% to
a zero.

4.    An Order declaring that the grade reported on Brown's personal internet grade
portal was false, fake, and materially understated as of February 5, 2018.

5.    An Order declaring that Smesko, and Brock, were precluded from penalizing
Brown in any way for turning in assignments two, three, four, and five under the
FGCU "Authorized Attendance" Policy.

6.    Prejudgment and post-judgment interest at the maximum rate;

7.    Attorney fees;

8.    Expert fees;

9.    All costs of court; and

10.    Such other and further relief to which Plaintiff may be justly entitled.

Plaintiff's Original Complaint
30 of 31

Respectfully submitted,

L. Yvonne Brown, Pro Se
FGCU Campus Housing
Apartment L-6
Fort Meyers, Florida 33965
(469)509-9247

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Original
Complaint was served upon each of the Defendants in a manner that is in compliance with the
Federal Rules of Civil Procedure on March 9, 2018.

L. Yvonne Brown