UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

L YVONNE BROWN,

        Plaintiff,

v.                      Case No: 2:18-cv-157-FtM-29MRM

FLORIDA GULF COAST
UNIVERSITY BOARD OF
TRUSTEES, KEN KAVANAGH,
individually and in official
capacity, KARL SMESKO,
individually and in official
capacity, RODERICK ROLLE,
individually and in official
capacity, and KELLY BROCK,
individually and in official
capacity,

        Defendants.

_____

**OPINION AND ORDER**

    This matter comes before the Court on review of defendants'
Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #51)
filed on October 12, 2018. Plaintiff filed a Response in
Opposition (Doc. #65) on November 1, 2018. Also before the Court
is plaintiff's Motion for Preliminary Injunction Hearing and
Expedited Discovery (Doc. #18). For the reasons set forth below,
the Court grants defendants' Motion to Dismiss Plaintiff's First
Amended Complaint and denies as moot plaintiff's Motion for
Preliminary Injunction Hearing and Expedited Discovery.

This case arises out of Plaintiff L. Yvonne Brown's (Plaintiff) dismissal from the Florida Gulf Coast University (FGCU) women's basketball team. According to the Amended Complaint (Doc. #43): In the fall of 2017, Plaintiff enrolled at FGCU and was a member of the FGCU women's basketball team. (Id. ¶ 8.) During the spring 2018 semester at FGCU, Plaintiff was a student in a Biology II lab class taught by Professor Roderick Rolle (Defendant Rolle). (Id.) As was customary in the class, Defendant Rolle assigned Plaintiff a lab partner with whom she collaborated on lab assignments. (Id. ¶¶ 17, 22.) Soon thereafter, Plaintiff's relationship with Defendant Rolle "took a dramatic turn for the worse . . . ." (Id. ¶ 9.)

On January 29, 2018, Plaintiff approached Defendant Rolle and asked him if there was anything she and her lab partner could do to make up for a low grade they received on a previous assignment. (Id. ¶ 35.) Defendant Rolle responded by informing Plaintiff that it would "be impossible for her, as a woman, to pass his lab class and play basketball [because] basketball and his . . . class 'do not coincide.'" (Id.) Defendant Rolle further stated that, because he believed Plaintiff was negatively affecting her partner's performance in class, he intended to partner Plaintiff with a student who had never attended class. (Id.) Plaintiff rejected that arrangement and "strongly rebuked Rolle for saying

she couldn't pass his class and play basketball and for implying that [Plaintiff] was the reason for the low grade . . . as opposed to [Plaintiff's] lab partner . . . ." (Id.) Defendant Rolle then told Plaintiff that he was not going to give Plaintiff credit for assignments she completed if she was not "physically present in his class for his instruction given on that particular [] assignment." (Id.)

On January 29, 2018, after her dispute with Defendant Rolle, Plaintiff met with Dr. Clifford Renk, the Chair of the Biology Department at FGCU, and "complained about the treatment she had just received" in Defendant Rolle's class. (Id. ¶ 36.) From January 30, 2018 through February 1, 2018, Defendant Rolle changed the grade of an assignment Plaintiff completed when she was not present in class for Defendant Rolle's instructions: Defendant Rolle changed the grade on lab assignment #2 from 100% to 0%, and then from 0% to "No Grade."[1] (Id. ¶¶ 32, 44, 45.) On February 5, 2018, Plaintiff asked Defendant Rolle how she could complete two assignments (lab assignments #4 and #5) because "these assignments became due while [Plaintiff] was in the midst of a road trip with the FGCU women's basketball team. . . ." (Id. ¶ 51.) Defendant Rolle then "walked away without answering [Plaintiff]." (Id.)

---

[1] Plaintiff additionally alleges that her grade on lab assignment #3 was changed from 100% to 0%. However, it is unclear to the Court whether Plaintiff alleges her grade on lab assignment #3 was also then changed from 0% to "No Grade." (Id. ¶ 79.)

On February 5, 2018, Plaintiff "was forced to submit her grades to" Kelly Brock (Defendant Brock), the Assistant Athletic Director at FGCU. (Id. ¶ 52.) On February 7, 2018, Karl Smesko (Defendant Smesko), the head-coach of the FGCU women's basketball team, informed Plaintiff that she "was being suspended immediately" from the women's basketball team because of her "'poor academic performance. . . .'" (Id. ¶ 54.)

On February 7, 2018, Plaintiff emailed Defendant Rolle her completed submissions for lab assignments #4 and #5, which Defendant Rolle previously "refused" to instruct Plaintiff on how to complete them "under [the] FGCU Authorized Absence Policy" when he "walked away without answering [Plaintiff's]" question on February 5, 2018. (Id. ¶¶ 51, 55.) On February 11, 2018, Defendant Rolle responded to Plaintiff's email, stating that he would not give Plaintiff any credit for the late assignments because she could have completed them before her athletic event and did not "'have to wait until the last day, and at the last hour,'" to turn them in. (Id. ¶ 56.) Plaintiff received grades of 0% on lab assignments #4 and #5. (Id.)

On February 14, 2018, Defendant Smesko informed Plaintiff that she was being dismissed from the women's basketball team because her grades "had not improved since the suspension . . . and 'because he had received some additional emails about th[e] situation with [Defendant] Rolle since February 7, 2018.'" (Id.

¶ 58.) On February 15, 2018, Defendant Brock informed Plaintiff that she "would no longer have access to the Athletic Academic Training Center" because she was dismissed from the women's basketball team. (Id. ¶ 60.) On February 16, 2018, Plaintiff sent Defendant Smesko an "Apology Letter" and requested that Defendant Smesko reinstate Plaintiff to the women's basketball team; Defendant Smesko denied Plaintiff's request. (Id. ¶¶ 61, 63.) Plaintiff then requested that Ken Kavanagh (Defendant Kavanagh), the FGCU Athletic Director, reinstate Plaintiff to the women's basketball team; Defendant Kavanagh also denied her request. (Id. ¶ 62.)

On February 22, 2018, Defendant Kavanagh informed Plaintiff "that he upheld [Defendant] Smesko's decision to dismiss [Plaintiff] from the FGCU women's basketball team." (Id. ¶ 68.) Plaintiff then informed Defendant Kavanagh that he had "skipped a step in the appeal process and made a final determination, as athletic director, before allowing [Plaintiff] to appeal [Defendant] Smesko's decision to the Sport Coordinator." (Id. ¶ 69.) On February 27, 2018, Defendant Kavanagh informed Plaintiff that he "was the Sport Coordinator for FGCU women's basketball and that he, as Sport Coordinator, was also denying [Plaintiff's] appeal seeking reinstatement to the FGCU women's basketball team." (Id. ¶ 72.) This lawsuit followed.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially

plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

A pleading drafted by a party proceeding *pro se*, like the Amended Complaint at issue here, is held to a less stringent standard than one drafted by an attorney, and the Court will construe the allegations contained therein liberally. Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015). Nevertheless, "a pro se pleading must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Id. Put simply, even a *pro se* complaint must set forth claims the Court has the power to resolve and allege facts showing that each cause of action is facially plausible.

### III.

The Amended Complaint asserts seven claims against the FGCU Board of Trustees (the FGCUBOT) and Defendants Kavanagh, Smesko, Rolle, and Brock in their official and individual capacities for violation of Plaintiff's procedural due process rights under 42 U.S.C. § 1983 (Count I), violation of Plaintiff's equal protection rights under Section 1983 (Count II), hostile educational

environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. (Count III), retaliation in violation of Title IX (Count IV), breach of contract (Count V), specific performance (Count VI), and injunctive relief (Count VII).[2]

Defendants now move to dismiss all Counts in the Amended Complaint. Defendants argue the entire Amended Complaint should be dismissed because (1) Plaintiff's claims are barred by sovereign immunity; and (2) the Amended Complaint otherwise fails to state a legally sufficient cause of action.[3] The sovereign immunity analysis differs depending on whether the claim at issue is asserted against Defendants Kavanagh, Smesko, Rolle, and Brock in their official or individual capacities. Thus, where appropriate, the Court separately addresses the official and individual capacity claims below.

**A.    The Section 1983 Claims (Counts I and II)**

Sovereign immunity "is the privilege of the sovereign not to be sued without its consent." Va. Office for Prot. & Advocacy v.

---

[2] Although the Amended Complaint does not number each claim against Defendants, the Court treats each identifiable claim asserted against Defendants as an individual Count and has numbered them accordingly.

[3] Defendants also argue that the claims against Defendants Kavanagh, Smesko, Rolle, and Brock in their individual capacities should be dismissed on the basis of qualified immunity. For the reasons discussed infra, however, the Court need not reach that issue.

_Stewart_, 563 U.S. 247, 253 (2011). A component of this sovereign immunity is set forth in the Eleventh Amendment to the United States Constitution, which provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. This Eleventh Amendment sovereign immunity "bars federal courts from entertaining suits against states" and arms of the state. _Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs_, 405 F.3d 1298, 1302 (11th Cir. 2005). However, "[t]he Eleventh Amendment bar to suit is not absolute." _Port Auth. Trans-Hudson Corp. v. Feeney_, 495 U.S. 299, 304 (1990). "States may consent to suit in federal court . . . and, in certain cases, Congress may abrogate the States' sovereign immunity." _Id._

"[G]iven how tightly Florida's government controls its public education system," boards of trustees of Florida's state universities are "arms of the State of Florida." _Univ. of S. Fla. Bd. of Trustees v. CoMentis, Inc._, 861 F.3d 1234, 1237 (11th Cir. 2017) (internal quotation omitted); _Crisman v. Fla. Atl. Univ. Bd. of Trs._, 572 F. App'x 946 (11th Cir. 2014) (per curiam). As such, absent waiver or abrogation by Congress, the FGCUBOT is entitled to Eleventh Amendment sovereign immunity against Plaintiff's Section 1983 claims. _Abusaid_, 405 F.3d at 1302.

### 1. The Section 1983 Claims against the FGCUBOT

As to Plaintiff's Section 1983 claims against the FGCUBOT, "Congress has not abrogated states' immunity from § 1983 suits." Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1301 (11th Cir. 2007) (citation omitted). Further, "Florida has not waived its immunity with regard to such suits." Wusiya v. City of Miami Beach, 614 F. App'x 389, 393 (11th Cir. 2015). Thus, the FGCUBOT is entitled to Eleventh Amendment sovereign immunity against Plaintiff's Section 1983 claims. Counts I and II are therefore dismissed with prejudice as to the FGCUBOT.

### 2. The Section 1983 Claims against Defendants Kavanagh, Smesko, Rolle, and Brock in their Official Capacities

Where an arm of the state is entitled to Eleventh Amendment sovereign immunity, that immunity also generally extends to claims against its officials in their official capacities. Melton v. Abston, 841 F.3d 1207, 1233 (11th Cir. 2016). State officials are not entitled to such immunity, however, when a plaintiff seeks "prospective injunctive or declaratory relief. . . ." Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1220 (11th Cir. 2000).

To determine whether this exception applies, the Court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc.

v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (citation and quotation omitted). "[R]equests for reinstatement constitute prospective injunctive relief . . . and, thus, are not barred by the Eleventh Amendment." Lane v. Cent. Ala. Cmty. Coll., 772 F.3d 1349, 1351 (11th Cir. 2014).

Here, Plaintiff alleges that, because of ongoing constitutional violations, she is entitled to benefits wrongly terminated (her membership on the FGCU women's basketball team and access to the Athletic Academic Center) and seeks to have those benefits reinstated. Thus, Plaintiff's Section 1983 claims against Defendants Kavanagh, Smesko, Rolle, and Brock in their official capacities are not barred by the Eleventh Amendment. Lane, 772 F.3d at 1351. The Court therefore addresses the merits of Plaintiff's procedural due process and equal protection claims below.

> a. **The Procedural Due Process Claim Against Defendants Kavanagh, Smesko, Rolle, and Brock in their Official Capacities (Count I)**

Plaintiff alleges she was deprived of procedural due process when she was (1) suspended and later dismissed from the FGCU women's basketball team and barred from accessing the Athletic Academic Training Center without notice and a hearing; and (2) deprived of an opportunity to appeal her suspension and dismissal from the FGCU women's basketball team pursuant to the FGCU Student-

Athlete Handbook.  Defendants argue Count I should be dismissed because Plaintiff failed to allege she sought all available state remedies before filing the instant procedural due process claim. The Court agrees.

To state a Section 1983 claim for the denial of procedural due process, a plaintiff must allege (1) a deprivation of a constitutionally protected property or liberty interest; (2) state action; and (3) constitutionally inadequate process. J.R. v. Hansen, 736 F.3d 959, 965 (11th Cir. 2013); Miccosukee Tribe of Indians v. United States, 716 F.3d 535, 559 (11th Cir. 2013).

A claim for denial of procedural due process is actionable under Section 1983 "only when the state refuses to provide a process sufficient to remedy the procedural deprivation." McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc). "It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) (citations omitted).  Thus, "the mere failure to follow state procedures does not necessarily rise to the level of a violation of federal procedural due process rights."  Maddox v. Stephens, 727 F.3d 1109, 1124 n. 15 (11th Cir. 2013).

Here, Plaintiff asserts that she was deprived of procedural due process because she was (1) suspended and later dismissed from

the FGCU women's basketball team and prohibited from accessing the Athletic Academic Center without notice and a hearing; and (2) deprived of an opportunity to appeal her suspension and dismissal from the FGCU women's basketball team pursuant to the FGCU Student-Athlete Handbook. Plaintiff, however, has failed to allege that she sought state court judicial review or that no adequate state remedies were otherwise available.

In her Response in Opposition, Plaintiff argues that while she may seek certiorari review of her dismissal from the FGCU women's basketball team in Florida state court, she is unable to seek certiorari review of her suspension from the team and, thus, there are no adequate state remedies available to her. Plaintiff contends such certiorari review is unavailable to her because "[a]ccording to FGCU Athletics, [] Plaintiff has no right to appeal any decision made by FGCU Athletics because [] Plaintiff has nothing but a privilege to participate in FGCU Athletics and thus . . . [t]here are no state court remedies for [] Plaintiff to exhaust." (Doc. #65, p. 4.) Plaintiff, however, cites to no legal authority to support her contention that she may not seek state court certiorari review of her suspension from the FGCU women's basketball team for the reasons asserted in this case. Thus, because Plaintiff has not plausibly alleged that the state "refuse[d] to provide a process sufficient to remedy the procedural deprivation," Plaintiff has failed to state a procedural due

process claim under Section 1983. <u>McKinney</u>, 20 F.3d at 1557. Count I is therefore dismissed without prejudice as to Defendants Kavanagh, Smesko, Rolle, and Brock in their official capacities.

   **b. The Equal Protection Claim Against Defendants Kavanagh, Smesko, Rolle, and Brock in their Official Capacities (Count II)**

  In Count II, Plaintiff alleges that Defendants violated her equal protection rights. Defendants argue Count II should be dismissed because Plaintiff failed to allege that she was treated differently from a comparator similarly situated to her. The Court agrees.

  Count II asserts a claim based upon the "class of one" theory of equal protection. A class of one claim is implicated "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam); <u>Griffin Indus., Inc. v. Irvin</u>, 496 F.3d 1189, 1201 (11th Cir. 2007).

  In a class of one equal protection claim, a plaintiff must allege the existence of a similarly situated individual who was treated more favorably than the plaintiff herself. <u>Griffin Indus., Inc.</u>, 496 F.3d at 1204-05. This requires a plaintiff to demonstrate that she was treated differently than a comparator who

is "prima facie identical in all relevant respects." Id. at 1204 (citation and quotation omitted).

Here, Plaintiff alleges that Defendants violated her equal protection rights by suspending and later dismissing Plaintiff from the FGCU women's basketball team and terminating her access to the FGCU Athletic Academic Center without notice and a hearing. Plaintiff, however, has not identified a comparator who is similarly situated to her in all relevant respects, nor has she alleged how she was treated differently from that comparator. Thus, Plaintiff has failed to plausibly state an equal protection claim under Section 1983 and Count II is therefore dismissed without prejudice as to Defendants Kavanagh, Smesko, Rolle, and Brock in their official capacities.

**3.    The Section 1983 Claims against Defendants Kavanagh, Smesko, Rolle, and Brock in their Individual Capacities**

As to Plaintiff's Section 1983 claims against Defendants Kavanagh, Smesko, Rolle, and Brock in their individual capacities, the individual Defendants "are not entitled to sovereign immunity when they are sued in their individual capacities under Section 1983." Melton, 841 F.3d at 1234 (emphasis in original) (citation omitted). However, because Plaintiff has failed to state a claim for procedural due process and equal protection violations as discussed *supra*, Counts I and II are dismissed without prejudice

as to Defendants Kavanagh, Smesko, Rolle, and Brock in their individual capacities.

**B.   The Title IX Claims (Counts III and IV)**

> **1.   The Title IX Claims Against the FGCUBOT and Defendants Kavanagh, Smesko, Rolle, and Brock in their Official Capacities**

"Congress validly abrogated the states' immunity from Title IX suits." _Williams_, 477 F.3d at 1301. Accordingly, Plaintiff's Title IX claims against the FGCUBOT and Defendants Kavanagh, Smesko, Rolle, and Brock in their official capacities are not due to be dismissed on the basis of Eleventh Amendment sovereign immunity. The Court therefore addresses their merits below.

> > **a.   The Hostile Educational Environment Claim (Count III)**

Count III is a hostile educational environment claim, which the Court construes as arising under Title IX. It alleges that Defendants created a hostile educational environment by (1) improperly penalizing Plaintiff for utilizing the Authorized Absence policy; (2) suspending and later dismissing Plaintiff from the FGCU women's basketball team and terminating Plaintiff's access to the Athletic Academic Center without notice and a hearing; and (3) having Defendants Rolle and Brock file false complaints about Plaintiff's conduct with the FGCU Athletic Department. Defendants argue Count III should be dismissed because

Plaintiff failed to plausibly state a hostile educational environment claim. The Court agrees.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To state a hostile educational environment claim under Title IX, a plaintiff must demonstrate a university's "deliberate indifference to known acts" of harassment. Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 648 (1999). The harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Id. at 650.

Here, Plaintiff has failed to plausibly allege that she suffered from such harassment for two reasons. First, the Title IX hostile educational environment standard discussed *supra* applies where a university is "deliberately indifferent to sexual harassment" perpetuated against a student. Id. In this case, Plaintiff has not alleged that she was the victim of sexual harassment or that she otherwise suffered from any sex-based harassment actionable under Title IX.[4]

---

[4] Similarly, Plaintiff has not plausibly stated that Defendant Rolle's or Defendant Brock's allegedly false complaints about her are actionable under Title IX because she has not plausibly alleged

Second, Plaintiff's hostile educational environment claim stems from Defendants' alleged failure to permit Plaintiff to complete assignments under the Authorized Absence policy. Plaintiff contends that because she was not allowed to turn in assignments pursuant to the Authorized Absence policy, she unfairly received failing grades for those assignments and was then improperly dismissed from the women's basketball team and prohibited from accessing the Athletic Academic Center. According to the Amended Complaint, the Authorized Absence policy provides that:

> An authorized absence is an absence due to participation in a university sponsored activity that has been approved in advance by the director and the appropriate student affairs officer. Such an absence permits the student to make up the work missed when practical or to be given special allowance to [sic] that he/she is not penalized for the absence.

(Doc. #43, ¶ 86.) Plaintiff has not alleged whether her absences from Defendant Rolle's class or her late submissions of the contested assignments to Defendant Rolle were "approved in advance by the director and the appropriate student affairs officer" as the Authorized Absence policy requires. (Doc. #1, ¶ 68.) Thus, Plaintiff has not plausibly alleged that Defendants harassed Plaintiff by refusing to allow her to utilize the Authorized Absence policy, because it is unclear whether she even received

---

they were filed "on the basis of [Plaintiff's] sex. . . ." 20 U.S.C. § 1681(a).

the requisite approval under the policy. Moreover, as discussed *supra*, Plaintiff has stated no facts indicating that such alleged harassment is actionable under Title IX because she has not plausibly alleged that it occurred "on the basis of [Plaintiff's] sex. . . ." 20 U.S.C. § 1681(a). Count III is therefore dismissed without prejudice as to the FGCUBOT and Defendants Kavanagh, Smesko, Rolle, and Brock in their official capacities.

### b. The Retaliation Claim (Count IV)

Count IV is a retaliation claim, which the Court construes as arising under Title IX. It asserts that (1) Defendant Rolle changed Plaintiff's grades in retaliation for Plaintiff rebuking him for calling her "dumb" and telling her "she can't pass his class and play basketball"; (2) Defendants retaliated against Plaintiff by suspending and later dismissing Plaintiff from the FGCU women's basketball team and terminating her access to the FGCU Athletic Academic Center; and (3) Defendants Rolle and Brock retaliated against Plaintiff by filing false complaints against Plaintiff with the FGCU Athletics Department. Defendants argue Count IV should be dismissed because Plaintiff failed to plausibly state a claim for retaliation. The Court agrees.

To state a claim for retaliation under Title IX, a plaintiff "must show (1) [s]he engaged in statutorily protected expression; (2) the [defendant] took action that would have been materially adverse to a reasonable person; and (3) there was a causal link

between the two events." <u>McCullough v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 623 F. App'x 980, 982 (11th Cir. 2015).[5] To "engage in protected activity" a plaintiff must, "at the very least, communicate her belief that [sex] discrimination is occurring . . . and cannot rely on the [defendant] to infer that discrimination has occurred." <u>Demers v. Adams Homes of Nw. Fla., Inc.</u>, 321 F. App'x 847, 852 (11th Cir. 2009) (citation and quotation omitted).

Here, Plaintiff has not alleged that she engaged in protected activity under Title IX because she has not stated whether she "communicate[d] her belief that [sex] discrimination [was] occurring . . . ." <u>Demers</u>, 321 F. App'x at 852. Thus, Plaintiff has not plausibly stated a retaliation claim and Count IV is therefore dismissed without prejudice as to the FGCUBOT and Defendants Kavanagh, Smesko, Rolle, and Brock in their official capacities.

**2. The Title IX Claims Against Defendants Kavanagh, Smesko, Rolle, and Brock in their Individual Capacities (Counts III and IV)**

Plaintiff also asserts her hostile educational environment and retaliation Title IX claims against Defendants Kavanagh,

---

[5] The Eleventh Circuit has not explicitly outlined the elements of a Title IX retaliation claim. The Eleventh Circuit has, however, stated that Title VII and Title IX are construed *in pari materia*. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003). Thus, the Court applies the Title VII retaliation framework to the instant Title IX retaliation claim.

Smesko, Rolle, and Brock in their individual capacities. Title IX, however, "does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations." <u>Williams</u>, 477 F.3d at 1300. Moreover, a plaintiff may not use Section 1983 to assert a Title IX claim against university officials in their individual capacities. <u>Id.</u> The Court therefore dismisses with prejudice Counts III and IV as to Defendants Kavanagh, Smesko, Rolle, and Brock in their individual capacities.

**C.  The Breach of Contract Claim (Count V)**

Count V asserts a claim for breach of contract. Specifically, it alleges that Defendants breached their contractual obligations to Plaintiff by (1) failing to enforce the FGCU Authorized Absence policy; and (2) suspending and subsequently dismissing Plaintiff from the FGCU women's basketball team and terminating her access to the Athletic Academic Center without notice and a hearing.

The Florida Supreme Court has recognized an implied waiver of Florida's sovereign immunity for breach of contract claims. <u>Pan-Am Tobacco Corp. v. Dep't of Corr.</u>, 471 So. 2d 4, 5-6 (Fla. 1984). That waiver, however, only applies "to suits on express, written contracts into which the state agency has statutory authority to enter." <u>Id.</u> at 6. Absent a written contract, sovereign immunity bars breach of contract claims against the State of Florida. <u>City</u>

of Gainesville v. State, Dep't of Transp., 778 So. 2d 519, 530 (Fla. 1st DCA 2001).

Here, Plaintiff has not alleged that she entered into a written contract with Defendants. Thus, as currently pled, Plaintiff's claim for breach of contract is barred by sovereign immunity and Count V is therefore dismissed without prejudice as to the FGCUBOT and Defendants Kavanagh, Smesko, Rolle, and Brock in their official capacities.[6] Further, Plaintiff has not alleged that she entered into a contract with any of the individual defendants. Accordingly, Plaintiff has failed to state a claim against Defendants Kavanagh, Smesko, Rolle, and Brock in their individual capacities. See Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) (citation omitted) ("The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach."). Thus, Count V is also dismissed without prejudice as to Defendants Kavanagh, Smesko, Rolle, and Brock in their individual capacities.

---

[6] In her Response in Opposition, Plaintiff argues that "[t]he FGCU Student Code of Conduct is a contract between [Plaintiff] and FGCU." (Doc. #65, p. 6.) Under Florida law, a university handbook constitutes a "contract implied in fact," not an express written contract. Jallali v. Nova Se. Univ., Inc., 992 So. 2d 338, 342 (Fla. 4th DCA 2008). When a "contract is merely implied . . . sovereign immunity protections remain in force." City of Fort Lauderdale v. Israel, 178 So. 3d 444, 447-48 (Fla. 4th DCA 2015).

**D.   The Specific Performance Claim (Count VI)**

Count VI is a claim for specific performance.  The Court is aware of no statute or legal authority – and Plaintiff does not cite to any – as the basis for her specific performance claim in Count VI.  Indeed, in Florida, specific performance is an equitable remedy for a breach of contract, not an independent cause of action.  See, e.g., Bay Club, Inc. v. Brickell Bay Club, Inc., 293 So. 2d 137, 138 (Fla. 3d DCA 1974).

Nonetheless, even if specific performance were an independent cause of action, Plaintiff has not demonstrated that she is entitled to the equitable remedy in this case because she must first establish she entered into a "valid and enforceable" contract with Defendants.  Free v. Free, 936 So. 2d 699, 702 (Fla. 5th DCA 2006).  Further, "specific performance is granted only where the parties have actually entered into an agreement that is definite and certain in all of its essential elements."  Bay Club, Inc., 293 So. 2d at 138.  Because Plaintiff has not alleged that she entered into such a contract with Defendants, Count VI is dismissed without prejudice as to the FCGUBOT and Defendants Kavanagh, Smesko, Rolle, and Brock in their official and individual capacities.

**E.   The Injunctive Relief Claim (Count VII)**

Plaintiff asserts a claim for injunctive relief against the FGCUBOT and Defendants Kavanagh, Smesko, Rolle, and Brock in their

official and individual capacities.  The Court construes this claim as a request for a preliminary injunction.

A preliminary injunction "is an extraordinary and drastic remedy . . . ."  <u>Zardui-Quintana v. Richard</u>, 768 F.2d 1213, 1216 (11th Cir. 1985) (citation and quotation omitted).  To be entitled to a preliminary injunction, a movant must establish (1) "a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."  <u>Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.</u>, 557 F.3d 1177, 1198 (11th Cir. 2009) (citation and quotation omitted).

As discussed *supra*, Plaintiff has failed to state a claim upon which relief may be granted.  Thus, Plaintiff has not established a substantial likelihood of success on the merits and is therefore not entitled to a preliminary injunction.  <u>Id.</u> Plaintiff has also failed to address any of the four factors to warrant the issuance of a preliminary injunction as required by

Local Rule 4.05(b)(4). <u>Wall v. Ferrero</u>, 142 Fed. Appx. 405 (11th Cir. 2005).[7] Thus, Count VII is dismissed without prejudice.[8]

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #51) is **GRANTED**.

2. Counts I and II are:

   a. **Dismissed with prejudice** as to the Florida Gulf Coast University Board of Trustees; and

   b. **Dismissed without prejudice** as to defendants Ken Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their official and individual capacities.

3. Counts III and IV are:

   a. **Dismissed with prejudice** as to defendants Ken Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their individual capacities; and

   b. **Dismissed without prejudice** as to the Florida Gulf Coast University Board of Trustees and defendants

---

[7] Local Rule 4.05(b)(4) provides that a party seeking a preliminary injunction "must address the following issues: (i) the likelihood that the moving party will ultimately prevail on the merits of the claim; (ii) the irreparable nature of the threatened injury and the reason that notice cannot be given; (iii) the potential harm that might be caused to the opposing parties or others if the order is issued; and (iv) the public interest, if any."

[8] Because Plaintiff is not entitled to a preliminary injunction, the Court denies as moot her Motion for Preliminary Injunction Hearing and Expedited Discovery (Doc. # 18).

Ken Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their official capacities.

4. Count V is **dismissed without prejudice** as to the Florida Gulf Coast University Board of Trustees and defendants Ken Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their official and individual capacities.

5. Count VI is **dismissed without prejudice** as to the Florida Gulf Coast University Board of Trustees and defendants Ken Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their official and individual capacities.

6. Count VII is **dismissed without prejudice** as to the Florida Gulf Coast University Board of Trustees and defendants Ken Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their official and individual capacities.

7. Plaintiff's Motion for Preliminary Injunction Hearing and Expedited Discovery (Doc. #18) is **denied as moot.**

8. Plaintiff may file a Second Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this __14th__ day of November, 2018.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties and Counsel of Record