UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

L. YVONNE BROWN,

        Plaintiff,

v.                          Case No: 2:18-cv-157-FtM-29MRM

FLORIDA GULF COAST
UNIVERSITY BOARD OF
TRUSTEES, KEN KAVANAGH,
individually and in official
capacity, KARL SMESKO,
individually and in official
capacity, RODERICK ROLLE,
individually and in official
capacity, and KELLY BROCK,
individually and in official
capacity,

        Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on defendants' Motion to Dismiss (Doc. #95) filed on January 31, 2019. Plaintiff filed a Response (Doc. #98) on February 25, 2019. For the reasons set forth below, the motion is granted.

**I.**

This case arises out of Plaintiff L. Yvonne Brown's (Plaintiff) suspension from the Florida Gulf Coast University (FGCU) women's basketball team. According to the Second Amended Complaint (Doc. #77): In the fall of 2017, Plaintiff enrolled at FGCU and was a member of the FGCU women's basketball team. (Id.

¶ 8.)  During the spring 2018 semester at FGCU, Plaintiff was a student in a Biology II lab class taught by Professor Roderick Rolle (Defendant Rolle).  (Id.)  As was customary in the class, Defendant Rolle assigned Plaintiff a lab partner with whom she collaborated on lab assignments.  (Id. ¶¶ 16, 21.)  Soon thereafter, Plaintiff's relationship with Defendant Rolle "took a dramatic turn for the worse . . . ."  (Id. ¶ 9.)

On January 29, 2018, Plaintiff approached Defendant Rolle and asked him if there was anything she and her lab partner could do to make up for a low grade they received on a previous assignment. (Id. ¶ 34.)  Defendant Rolle responded by informing Plaintiff that it would "be impossible for her, as a woman, to pass his lab class and play basketball [because] basketball and his . . . class 'do not coincide.'"  (Id.)  Defendant Rolle further stated that, because he believed Plaintiff was negatively affecting her partner's performance in class, he intended to partner Plaintiff with a student who had never attended class.  (Id.)  Plaintiff rejected that arrangement and "strongly rebuked [Defendant] Rolle for saying she couldn't pass his class and play basketball and for implying that [Plaintiff] was the reason for the low grade . . . as opposed to [Plaintiff's] lab partner . . . ."  (Id.)  Defendant Rolle then told Plaintiff that he would not give Plaintiff credit for assignments she completed if she was not "physically present

in his class for his instruction given on that particular []
assignment." (Id.)

On January 29, 2018, after her dispute with Defendant Rolle,
Plaintiff met with Defendant Rolle's supervisor, Dr. Clifford
Renk, the Chair of the Biology Department at FGCU, and "complained
about the treatment she had just received" in Defendant Rolle's
class. (Id. ¶ 35.) On January 30, 2018, Defendant Rolle changed
Plaintiff's grade on lab assignments #2 and #3 from 100% to 0%.
(Id. ¶ 57.) On January 31, 2018, Kelly Brock (Defendant Brock),
the Assistant Athletic Director at FGCU, filed a complaint against
Plaintiff with Karl Smesko (Defendant Smesko), the head-coach of
the FGCU women's basketball team. (Id. ¶¶ 4, 40.) Defendant
Brock alleged in the complaint that Plaintiff "used the property
of someone else without their permission in the FGCU student-
athlete academic center" and "caused a disruption . . . in the
student-athlete academic center." (Id. ¶ 40.)

On February 5, 2018, Plaintiff asked Defendant Rolle how she
could turn in two assignments (lab assignments #4 and #5) because
Plaintiff was "in the midst of an FGCU women's basketball road
trip" when those assignments became due. (Id. ¶¶ 41, 47.)
Defendant Rolle "did not respond and walked away from [Plaintiff]."
(Id. ¶ 47.) Also on February 5, 2018, Plaintiff "was forced to
submit her grades to" Defendant Brock. (Id. ¶ 48.) On February
7, 2018, Defendant Smesko informed Plaintiff that she "was being

suspended immediately" from the women's basketball team because of her "'poor academic performance. . . .'" (Id. ¶ 50.)

On February 7, 2018, "after [Plaintiff] returned from her road trip" with the FGCU women's basketball team, Plaintiff turned in her completed submissions for lab assignments #4 and #5. (Id. ¶¶ 51, 58.) Defendant Rolle "refused to give [Plaintiff] credit" for these assignments because she could have submitted them before she left on the trip with the FGCU women's basketball team. (Id. ¶ 58.) On February 11, 2018, Defendant Rolle "instructed [Plaintiff] to turn in all future assignments before leaving for a women's basketball road trip." (Id.)

Defendant Brock ultimately dismissed Plaintiff from the Athletic Academic Advising Center. (Id. ¶ 62.) On June 22, 2018, Defendant Smesko executed a declaration, providing that he suspended Plaintiff from the FGCU women's basketball team "due to [Plaintiff's] poor academic performance" and because of the "misconduct alleged by [Defendant] Brock." (Id. ¶ 54.) This lawsuit followed.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 555.  <u>See also</u> <u>Edwards v. Prime Inc.</u>, 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," <u>Mamani v. Berzain</u>, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

A pleading drafted by a party proceeding *pro se*, like the Amended Complaint at issue here, is held to a less stringent standard than one drafted by an attorney, and the Court will construe the allegations contained therein liberally. Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015). Nevertheless, "a pro se pleading must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Id. Put simply, even a *pro se* complaint must set forth claims the Court has the power to resolve and allege facts showing that each cause of action is facially plausible.

**III.**

The Second Amended Complaint asserts seven claims against the FGCU Board of Trustees (the FGCUBOT) and Defendants Kavanagh, Smesko, Rolle, and Brock in their official and individual capacities[1] for: Violation of Plaintiff's procedural due process

_____

[1] The Second Amended Complaint is unclear as to whether Plaintiff asserts claims against Defendants Kavanagh, Smesko, Rolle, and Brock in their official capacities, individual capacities, or both. Because Plaintiff previously asserted her claims against these defendants in both their official and individual capacities, the Court construes the claims asserted here as being both official and individual capacity claims. Hobbs v. Roberts, 999 F.2d 1526, 1528 (11th Cir. 1993)("Where [a] complaint is unclear on whether officials are sued personally, in their official capacity, or *both*, courts must look to the course of the proceedings which will typically indicate the nature of the liability sought to be imposed." (citation and quotation omitted)(emphasis in original)).

rights pursuant to 42 U.S.C. § 1983 (Count I), violation of Plaintiff's equal protection rights pursuant to Section 1983 (Count II), violation of the Higher Education Act of 1965 (Count III), retaliation (Count IV), judicial review pursuant to the Administrative Procedure Act (Count V), a claim for various forms of declaratory relief (Count VI), and injunctive relief (Count VII).[2]

Defendants now move to dismiss the entire Second Amended Complaint because (1) Plaintiff's claims are barred by sovereign immunity; and (2) the Second Amended Complaint otherwise fails to state a legally sufficient cause of action. The sovereign immunity analysis differs depending on whether the claim at issue is asserted against Defendants Kavanagh, Smesko, Rolle, and Brock in their official or individual capacities. Thus, where appropriate, the Court separately addresses the official and individual capacity claims below.

## A. The Section 1983 Claims (Counts I and II)

Sovereign immunity "is the privilege of the sovereign not to be sued without its consent." Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 253 (2011). A component of this sovereign

---

[2] Although the Second Amended Complaint does not number each claim against Defendants, the Court treats each identifiable claim asserted against Defendants as an individual Count and has numbered them accordingly.

immunity is set forth in the Eleventh Amendment to the United States Constitution, which provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. This Eleventh Amendment sovereign immunity "bars federal courts from entertaining suits against states" and arms of the state. Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs, 405 F.3d 1298, 1302 (11th Cir. 2005). However, "[t]he Eleventh Amendment bar to suit is not absolute." Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). "States may consent to suit in federal court . . . and, in certain cases, Congress may abrogate the States' sovereign immunity." Id.

"[G]iven how tightly Florida's government controls its public education system," boards of trustees of Florida's state universities are "arms of the State of Florida." Univ. of S. Fla. Bd. of Trustees v. CoMentis, Inc., 861 F.3d 1234, 1237 (11th Cir. 2017) (internal quotation omitted); Crisman v. Fla. Atl. Univ. Bd. of Trs., 572 F. App'x 946 (11th Cir. 2014). As such, absent waiver or abrogation by Congress, the FGCUBOT is entitled to Eleventh Amendment sovereign immunity against Plaintiff's Section 1983 claims. Abusaid, 405 F.3d at 1302.

**1. The Section 1983 Claims Against the FGCUBOT**

"Congress has not abrogated states' immunity from § 1983 suits." Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1301 (11th Cir. 2007) (citation omitted). Further, "Florida has not waived its immunity with regard to such suits." Wusiya v. City of Miami Beach, 614 F. App'x 389, 393 (11th Cir. 2015). Thus, in its Opinion and Order (Doc. #73, p. 10) granting Defendants' previous motion to dismiss (Doc. #51), the Court found Plaintiff's Section 1983 claims against the FGCUBOT barred by sovereign immunity and dismissed those claims with prejudice.[3] Plaintiff now reasserts her Section 1983 claims against the FGCUBOT and argues they are not barred by sovereign immunity because "Congress has enacted a partial waiver as to judicial review under the Administrative Procedure Act." (Doc. #77 ¶ 67.)

The Administrative Procedure Act (APA) "provides for judicial review of federal agency actions and allows federal courts to enjoin authorities of the United States government." Citizens for Smart Growth v. Sec'y of Dep't of Transp., 669 F.3d 1203, 1210 (11th Cir. 2012)(citations omitted). Except in limited

---

[3] The sovereign immunity exception for claims against state officials seeking prospective declaratory or injunctive relief discussed *infra* does not apply to the FGCUBOT. See Seminole Tribe of Fla. v. Fla. Dep't of Revenue, 750 F.3d 1238, 1243 (11th Cir. 2014)("Florida, an unconsenting State, is immune from suit regardless of the nature of the relief sought." (citation and quotations omitted)).

circumstances not present here, "the APA does not apply to state agencies" such as the FGCUBOT.  Id.  Accordingly, Plaintiff's Section 1983 claims against the FGCUBOT are barred by sovereign immunity and dismissed with prejudice for the reasons previously stated by the Court.

**2.    The Section 1983 Claims against Defendants Kavanagh, Smesko, Rolle, and Brock in their Official Capacities**

Where an arm of the state is entitled to Eleventh Amendment sovereign immunity, that immunity also generally extends to claims against its officials in their official capacities.  Melton v. Abston, 841 F.3d 1207, 1233 (11th Cir. 2016).  State officials are not entitled to such immunity, however, when a plaintiff seeks "prospective injunctive or declaratory relief. . . ."  Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1220 (11th Cir. 2000).

To determine whether this exception applies, the Court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (citation and quotation omitted).  "[R]equests for reinstatement constitute prospective injunctive relief . . . and, thus, are not barred by the Eleventh Amendment."  Lane v. Cent. Ala. Cmty. Coll., 772 F.3d 1349, 1351 (11th Cir. 2014).

Here, Plaintiff alleges that, because of ongoing constitutional violations, she is entitled to benefits wrongly terminated (her membership on the FGCU women's basketball team and access to the Athletic Academic Advising Center) and seeks to have those benefits reinstated. Thus, Plaintiff's Section 1983 claims against Defendants Kavanagh, Smesko, Rolle, and Brock in their official capacities for this prospective relief are not barred by the Eleventh Amendment. Lane, 772 F.3d at 1351. The Court therefore addresses the merits of Plaintiff's procedural due process and equal protection claims below.

   a.   **The Procedural Due Process Claim Against Defendants Kavanagh, Smesko, Rolle, and Brock in their Official Capacities (Count I)**

Plaintiff alleges she was deprived of procedural due process when she was (1) suspended from the FGCU women's basketball team and (2) barred from accessing the Athletic Academic Advising Center without notice and a hearing. Defendants argue Count I should be dismissed because Plaintiff failed to allege that she sought all available state remedies before filing the instant procedural due process claim. The Court agrees.

To state a Section 1983 claim for the denial of procedural due process, a plaintiff must allege (1) a deprivation of a constitutionally protected property or liberty interest; (2) state action; and (3) constitutionally inadequate process. J.R. v.

Hansen, 736 F.3d 959, 965 (11th Cir. 2013); Miccosukee Tribe of Indians v. United States, 716 F.3d 535, 559 (11th Cir. 2013). A claim for denial of procedural due process is actionable under Section 1983 "only when the state refuses to provide a process sufficient to remedy the procedural deprivation." McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994). "It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) (citations omitted). Thus, "the mere failure to follow state procedures does not necessarily rise to the level of a violation of federal procedural due process rights." Maddox v. Stephens, 727 F.3d 1109, 1124 n. 15 (11th Cir. 2013).

Here, Plaintiff asserts that there are no adequate state remedies for reviewing her suspension from the women's basketball team and dismissal from the Athletic Academic Advising Center because (1) suspensions cannot be appealed to FGCU's Intercollegiate Athletic Reinstatement Appeals Committee and thus her suspension from the women's basketball team cannot be reviewed by a state court; and (2) Plaintiff "has no right to appeal" her dismissal from the Athletic Academic Advising Center to any department within FGCU and thus her dismissal cannot be reviewed by a state court. (Doc. #77 ¶ 68.)

Plaintiff's bald legal conclusions are insufficient to plausibly allege that Defendants' actions are not subject to certiorari review in state court. See e.g. Decker v. Univ. of W. Fla., 85 So. 3d 571, 572 (Fla. 1st DCA 2012)(finding that certiorari review is "[t]he proper remedy" for review of "disciplinary sanctions against [a student] for a violation of the university's Academic Misconduct Code"); Couchman v. Univ. of Cent. Fla., 84 So. 3d 445, 446 (Fla. 5th DCA 2012)(noting that the "proper remedy" for a university student "seeking review of [a university's] decision to impose certain disciplinary sanctions . . . is to seek certiorari review" (citations omitted)). Accordingly, because Plaintiff has not plausibly alleged that the state "refuse[d] to provide a process sufficient to remedy [her] procedural deprivation," and since Florida law establishes the existence of such a remedy, Plaintiff has failed to state a legally sufficient procedural due process claim pursuant to Section 1983. McKinney, 20 F.3d at 1557. Count I is therefore dismissed with prejudice as to Defendants Kavanagh, Smesko, Rolle, and Brock in their official capacities.

**b.    The Equal Protection Claim Against Defendants Kavanagh, Smesko, Rolle, and Brock in their Official Capacities (Count II)**

Although not alleged in detail, Plaintiff appears to assert that Defendants violated her equal protection rights.    To the

extent that Plaintiff does assert an equal protection claim, the Court construes such a claim to be based upon the "class of one" theory of equal protection.

A class of one claim is implicated "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1201 (11th Cir. 2007). In a class of one equal protection claim, a plaintiff must allege the existence of a similarly situated individual who was treated more favorably than the plaintiff herself. Griffin Indus., Inc., 496 F.3d at 1204–05. This requires a plaintiff to demonstrate that she was treated differently than a comparator who is "prima facie identical in all relevant respects." Id. at 1204 (citation and quotation omitted).

Here, Plaintiff has not identified a comparator who is similarly situated to her in all relevant respects, nor has she alleged how she was treated differently from that comparator. Thus, Plaintiff has failed to plausibly state an equal protection claim pursuant to Section 1983 and Count II is therefore dismissed without prejudice as to Defendants Kavanagh, Smesko, Rolle, and Brock in their official capacities.

**3.** **The Section 1983 Claims against Defendants Kavanagh, Smesko, Rolle, and Brock in their Individual Capacities**

As to Plaintiff's Section 1983 claims against Defendants Kavanagh, Smesko, Rolle, and Brock in their individual capacities, the individual Defendants "are not entitled to sovereign immunity when they are sued in their <u>individual</u> capacities under Section 1983." <u>Melton</u>, 841 F.3d at 1234 (emphasis in original) (citation omitted). However, because Plaintiff has failed to state a legally sufficient claim for procedural due process and equal protection violations, as discussed *supra*, Count I is dismissed with prejudice as to Defendants Kavanagh, Smesko, Rolle, and Brock in their individual capacities and Count II is dismissed without prejudice as to Defendants Kavanagh, Smesko, Rolle, and Brock in their individual capacities.

**B.** **The Higher Education Act of 1965 Claim (Count III)**

Count III is a claim against Defendants for violation of the Higher Education Act of 1965 (the HEA). It asserts that Defendants violated Plaintiff's free speech rights under the HEA when Defendants suspended Plaintiff from the women's basketball team and dismissed Plaintiff from the Athletic Academic Advising Center after Plaintiff complained to Defendant Rolle's supervisor that Defendant Rolle failed to credit Plaintiff's assignments pursuant to the FGCU Authorized Absence Policy. Defendants argue Count III

should be dismissed because the HEA does not confer a private right of action.  The Court agrees.

The HEA "provides an enforcement scheme which gives the Secretary of Education wide-ranging regulatory authority to enforce the provisions of the HEA."  McCulloch v. PNC Bank Inc., 298 F.3d 1217, 1221 (11th Cir. 2002)(citations omitted).  While the HEA's purpose is "to benefit students by making educational opportunities available to them," its enactment is "not tantamount to an expression of legislative intent in favor of equipping students with a private right of action . . . ."  Id. at 1222.  As a result, "the statutory text and structure of the HEA does not . . . create a private right of action in favor of [] students." Id. at 1223 (11th Cir. 2002); see also Bennett v. Premiere Credit of N. Am., LLC, 504 F. App'x 872, 875 (11th Cir. 2013) ("[I]t is well-settled that the HEA does not expressly provide . . . a private right of action" and confers "no implied private right of action." (quotation and citations omitted)).  Accordingly, because the HEA provides for no private right of action, Count III is dismissed with prejudice.[4]

_____

[4] Defendants also argue that Count III against the FGCUBOT is barred by sovereign immunity.  However, because the HEA confers no private right of action, the Court need not reach the issue of sovereign immunity.

**C.   The Retaliation Claim (Count IV)**

Plaintiff asserts that Defendants retaliated against her after she complained to Defendant Rolle's supervisor that Defendant Rolle failed to credit her assignments pursuant to the FGCU Authorized Absence Policy.  The Court previously construed Plaintiff's retaliation claim as arising under Title IX of the Education Amendments of 1972 (Doc. #73, pp. 19-20), but Plaintiff now expresses that her claims against Defendants should not be interpreted as arising under Title IX in "any way, shape, form, or fashion."  (Doc. #77, pp. 1-2.)

To the extent Plaintiff asserts a retaliation claim pursuant to the HEA, such a claim is not actionable for the reasons discussed *supra*.  And because Plaintiff has not identified the statutory basis of her retaliation claim, the Court can only speculate as to the legal basis for the allegation in Count IV. Accordingly, Plaintiff has failed to state a legally sufficient retaliation claim.  See <u>Beckwith v. Bellsouth Telecommunications Inc.</u>, 146 F. App'x 368, 371 (11th Cir. 2005)(noting that a plaintiff must "identify claims with sufficient clarity to enable the defendant to frame a responsive pleading" (citation omitted)). Count IV is therefore dismissed without prejudice.

**D.   The Judicial Review of Agency Action Claim (Count V)**

Count V asserts that Defendants violated Plaintiff's "right to judicial review of agency actions" pursuant to the APA when

Defendants suspended Plaintiff from the FGCU women's basketball team and dismissed her from the Athletic Academic Advising Center without notice, a hearing, or an opportunity to appeal. (Doc. #77 ¶ 71.)   As discussed *supra*, however, the APA "provides for judicial review of *federal* agency actions" and "does not apply to state agencies" such as the FGCUBOT. <u>Citizens for Smart Growth</u>, 669 F.3d at 1210 (emphasis added).  Count V is therefore dismissed with prejudice.

## E.  The Claim for Declaratory Relief (Count VI)

Plaintiff asserts a claim for various forms of declaratory relief and requests a Court order declaring, *inter alia*, that: (1) Plaintiff's grade on lab assignment #1 is "materially understated by [Defendant] Rolle" (Doc. #77 ¶ 56); (2) Plaintiff did not violate the FGCU Authorized Absence policy and "is entitled to full credit" on lab assignments #2, #3, #4, and #5 (<u>Id.</u> ¶ 59); (3) Plaintiff is entitled to notice and a hearing before the FGCU Student Conduct Office; (4) Defendant Brock's complaints about Plaintiff are "unsubstantiated [] and unfounded" (<u>Id.</u> ¶ 62); (5) Defendant Smesko's declaration about Plaintiff is "unsubstantiated [] and patently false" (<u>Id.</u> ¶ 61); (6) Plaintiff was entitled to notice and a hearing pursuant to FGCU internal regulations before she could be suspended from the FGCU women's basketball team and dismissed from the Athletic Academic Advising Center; and (7) Defendant Rolle violated the Authorized Absence Policy.  Plaintiff

argues she is entitled to these various declaratory judgments pursuant to the Declaratory Judgment Act.

The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201. It is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995)(quotation and citations omitted). Thus, the Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005). In addition, the "operation of the Declaratory Judgement Act is procedural only" and "does not enlarge the jurisdiction of the federal courts . . . ." GTE Directories Pub. Corp. v. Trimen Am., Inc., 67 F.3d 1563, 1567 (11th Cir. 1995). Accordingly, "a suit brought under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question." Borden v. Katzman, 881 F.2d 1035, 1037 (11th Cir. 1989).

Here, as set forth above, the Court has dismissed all Counts over which the Court has federal question jurisdiction[5], and the Court is aware of no "independent source of jurisdiction" for Count

---

[5] Plaintiff does not plead diversity jurisdiction in this case.

VI's claim for declaratory relief.  Id.  To the extent that this claim arises under Florida law, the Court declines to exercise supplemental jurisdiction over this state law claim.  Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004)(noting that the Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial" (citation omitted)).

Because the Court is aware of no independent basis for exercising jurisdiction over Count VI's claim for declaratory relief – and Plaintiff cites to no authority in support thereof – Count VI is dismissed without prejudice.  Ishler v. Internal Revenue, 237 F. App'x 394, 397 (11th Cir. 2007)(holding that a court is "without jurisdiction to consider" claims pursuant to the Declaratory Judgment Act where "federal question jurisdiction and diversity jurisdiction [are] . . . lacking").

**F.    The Injunctive Relief Claim (Count VII)**

Plaintiff asserts a claim for injunctive relief against the FGCUBOT and Defendants Kavanagh, Smesko, Rolle, and Brock in their official and individual capacities.  Specifically, Plaintiff seeks a Court order requiring Defendants to reinstate Plaintiff to the FGCU women's basketball team.  The Court construes this claim as a request for a preliminary injunction.

A preliminary injunction "is an extraordinary and drastic remedy . . . ."  Zardui-Quintana v. Richard, 768 F.2d 1213, 1216

(11th Cir. 1985) (citation and quotation omitted).  To be entitled to a preliminary injunction, a movant must establish (1) "a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."  Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd., 557 F.3d 1177, 1198 (11th Cir. 2009) (citation and quotation omitted).

As discussed *supra*, Plaintiff has failed to state a claim upon which relief may be granted.  Thus, Plaintiff has not established a substantial likelihood of success on the merits and is therefore not entitled to a preliminary injunction.  Id. Plaintiff has also failed to address any of the four factors to warrant the issuance of a preliminary injunction as required by Local Rule 4.05(b)(4).  Wall v. Ferrero, 142 F. App'x. 405 (11th Cir. 2005).[6]  Thus, Count VII is dismissed without prejudice.

_____

[6] Local Rule 4.05(b)(4) provides that a party seeking a preliminary injunction "must address the following issues: (i) the likelihood that the moving party will ultimately prevail on the merits of the claim; (ii) the irreparable nature of the threatened injury and the reason that notice cannot be given; (iii) the potential harm that might be caused to the opposing parties or others if the order is issued; and (iv) the public interest, if any."

In its previous Opinion and Order, the Court dismissed Plaintiff's First Amended Complaint and detailed the First Amended Complaint's deficiencies. Plaintiff, however, has failed to resolve those deficiencies and has again filed an insufficient pleading. In light of Plaintiff's *pro se* status, the Court will afford Plaintiff **one** last opportunity to file a Third Amended Complaint that fixes the pleading deficiencies discussed herein; no further amendments will be permitted.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.   Defendants' Motion to Dismiss (Doc. #95) is **GRANTED.**

2.   Count I is **dismissed with prejudice** as to the Florida Gulf Coast University Board of Trustees and defendants Ken Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their official and individual capacities.

3.   Count II is:

    a.   **Dismissed with prejudice** as to the Florida Gulf Coast University Board of Trustees; and

    b.   **Dismissed without prejudice** as to defendants Ken Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their official and individual capacities.

4.   Count III is **dismissed with prejudice** as to the Florida Gulf Coast University Board of Trustees and defendants Ken

Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their official and individual capacities.

5.      Count IV is **dismissed without prejudice** as to the Florida Gulf Coast University Board of Trustees and defendants Ken Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their official and individual capacities.

6.      Count V is **dismissed with prejudice** as to the Florida Gulf Coast University Board of Trustees and defendants Ken Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their official and individual capacities.

7.      Count VI is **dismissed without prejudice** as to the Florida Gulf Coast University Board of Trustees and defendants Ken Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their official and individual capacities.

8.      Count VII is **dismissed without prejudice** as to the Florida Gulf Coast University Board of Trustees and defendants Ken Kavanagh, Karl Smesko, Roderick Rolle, and Kelly Brock in their official and individual capacities.

9.      Plaintiff may file a Third Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.  If Plaintiff chooses to amend, the Third Amended Complaint may **<u>not</u>** include any claim which has been dismissed with prejudice.

**DONE and ORDERED** at Fort Myers, Florida, this __13th__ day

of May, 2019.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties and Counsel of Record